# CHARLESTON

## DIMMACK v. WHEELING TRACTION Co.

### Submitted June 10, 1905.    Decided November 7, 1905.

1. DEMURRER.

     Where a demurrer was interposed, and not passed upon by the lower court, it will be treated by this Court as having been overruled.    (p. 228).

2. JUROR.

     Upon the trial of an action where a corporation is a party, a juror is not disqualified to serve on the ground alone that he is in the employment of a stockholder or manager of such corporation. (p. 228).

3. JUROR—*Peremptory Challenge,*

     It is not error to refuse to allow questions to be asked a juror, when the sole purpose of such questions is to aid in the exercise of the right of peremptory challenge. (p. 228).

4. PERSONAL PROPERTY—*Verbal Contract.—Proof.*

     Where a verbal contract for the sale of personal property is made, and a contest arises as to what property was embraced by the terms thereof, it is competent to prove the price paid therefor, and the value of all the property claimed to have been purchased. (p. 229).

5. PERSONAL PROPERTY— *Verbal Contract.—Evidence.*

> If a verbal contract for the sale of personal property has been fully consummated, and subsequently thereto, and in compliance with the terms thereof, payment of the purchase price is made by check, taking a receipt therefor, no language or recitals contained in the check or receipt can be so construed as to alter the terms thereof; but where there is a contest as to what property was really embraced by the terms of the contract, and the check and receipt contain recitals defining the kind and quantity of property sold, they are competent evidence as tending to show what property was included in the sale. (p. 232)

Error to Circuit Court, Ohio County.

Action by Alfred Dimmack against the Wheeling Traction Company. There was judgment for defendant, and plaintiff brings error.

*Affirmed.*

WHITE & ALLEN, for plaintiff in error.

ERSKINE & ALLISON, for defendant in error.

SANDERS, JUDGE :

This is an action of detinue, instituted by the plaintiff, Alfred Dimmack, in the circuit court of Ohio county, against the Wheeling Traction Company, for the recovery of the possession of certain railway rails and steel fittings. Judgment below was given for the defendant, to which the plaintiff applied for and obtained a writ of error and *supersedeas.*

The plaintiff purchased the property which he claims in this action from J. G. Crawford, who claims to have purchased the same from the defendant. Therefore, the plaintiff's right to recover depends upon whether or not Crawford did make such purchase. The defendant had a lease on a base ball park ground on Wheeling Island in the city of Wheeling, which was about to expire, and this controversy grows out of a sale by the defendant to Crawford of certain property which it had upon said base ball park ground. The property which it had upon this ground was such as fences, grand stand, buildings, etc., and, also, it had stored there the steel rails and fittings in question. The defendant claims to have sold Crawford all the base ball ground materials, but that the rails and fittings were not included in the sale, while Crawford claims to have purchased all the property which the

defendant had upon the ground, including the rails and fittings.

The plaintiff's first assignment of error is that the demurrer to his declaration was not disposed of.   The record does not show that the demurrer was passed upon, but the plea of *non detinet* was filed, and the case tried upon its merits. Therefore, the demurrer will be treated as having been overruled.   The rule is that when the record does not disclose what the ruling of the court below was upon demurrer, this Court will consider that the demurrer was overruled.   I cannot see how the plaintiff can complain of the action of the court in not passing upon a demurrer to his declaration. The defendant makes no point in regard to it, and does not claim in this Court that the declaration is not good.

It is claimed that the court erred in refusing to permit the plaintiff, upon the impaneling of the jury, to inquire of them whether or not they were employes of the stockholders or managers of the defendant corporation.   The fact that a juror is in the employment of a stockholder of a corporation, does not disqualify him to serve, and is, therefore, no ground of challenge for cause ; and this being so, there is no duty resting upon the court to go into an inquisition, the sole purpose of which is to aid the defendant in determining whether he will challenge a juror peremptorily.   Therefore, the court committed no error in this respect.

The remaining assignments of error are numerous, but a treatment of them separately is entirely unnecessary, as a great many of them are tested by the same rules and principles, and are somewhat cumulative in effect.   Therefore, they can be treated under three heads : first, did the court err in the admission or rejection of testimony.   The fact that a verbal contract was made; that it was made at a certain time and place; that Crawford agreed to pay $200.00 for the materials; that a few days were given within which to make payment, and that he did make payment through Robinson and by his check, and took a receipt therefor, is all agreed; and the only question is, whether the steel rails and fittings were embraced in the terms of the contract, and upon this question there is a direct conflict in the evidence.   Therefore, in arriving at the terms of the contract, it is necessary to look at all the facts and circumstances surrounding the parties, and which led to

its consummation; and any evidence, however slight, that would in any way cast light upon the transaction, is admissible.

Complaint is made that the court permitted the defendant to prove the weight of the rails and fittings, and that they would sell in the market for so much per ton; and that Dimmack had hauled away a quantity of the rails before his act of so doing was discovered by the Traction Company; and that Shirley, the defendant's agent, was allowed to testify to the market value of the rails in February and April, 1901, and that the defendant company, in October, 1900, sold some other old rails at $19.00 per ton. This evidence was plainly admissible in determining what was included in the contract. The amount paid by Crawford for the material which he claimed to have purchased being $200.00, and there being a direct conflict as to whether or not the rails and fittings were embraced in the contract, it was certainly proper to permit the defendant to prove that its agent, who made the sale, knew that the rails and fittings were stored upon the base ball ground, and that they were of certain value, especially when upon the whole evidence it appears that the rails were of the value of $1,200 or $1,400, many times the amount of Crawford's contract price. It is not probable, but highly improbable, that the agent would include these rails and fittings in the contract, when they were worth many times the amount Crawford agreed to pay; and, therefore, this evidence was directly pertinent, and was proper to go to the jury, to throw light upon what property was really embraced in the contract, and if the evidence of the value of these rails as they were stored upon the ground was admissible, then evidence of the market value of the rails would also be competent, as corroborating the agent's testimony, and in order to determine just what rails were left on the ground, it was proper to inquire of Dimmack just how many he had hauled away. Then, again, the plaintiff says it was error for the court to permit the defendant, on the cross examination of Robinson, to question him relative to the sale of certain property to Shafer & Moore, which had been purchased by Crawford under his contract with the defendant. This evidence is, if for no other reason, admissible as tending to show the value of the material which the defendant says it sold Crawford. In

this sale, Crawford excepts the iron and rails stored on the ball ground, and sells the remainder of the property which he claims to have purchased for $350.00. If the property is worth $350.00, and this is evidence going to show that it is, then it is another circumstance tending to show the improbability of the rails and fittings being embraced in the contract.

The plaintiff also complains of the action of the court in refusing to permit him to give his judgment as to the value of these rails lying upon the ground, in the condition they were when he first saw them on the base ball ground. This calls for the opinion of the witness some considerable time after the contract of Crawford with the Traction Company, and he is not asked what the market value of these rails and fittings was. But even if the question should have been permitted to be answered, still it would not be such error as would call for a reversal of this case, because Dimmack himself shows, in a receipt exhibited with his evidence, that he purchased these rails from Crawford and agreed to pay $12.00 per ton, and in his declaration he lays his damages at $15 per ton, and there is very little dispute, if any, upon the whole evidence, as to the value of this property.

Second : Did the court err in giving and refusing certain instructions. The plaintiff asked for eight instructions, five of which were given and three refused. It is not argued by plaintiff's counsel, here, although it is assigned as error, in the petition, that there was any error in refusing to give No. 3. We see no good reason that can be urged in support of this instruction. It is plainly bad, and the court did right in rejecting it.

As to plaintiff's instruction No. 6, the court refused it on the ground that it had been covered by another instruction, and upon an examination of the instructions which were given, this is found to be correct.

As to instruction No. 7, the jury are told that if they believe from the evidence that the defendant offered to sell to J. G. Crawford its material or property upon the base ball ground, and that the rails in question then belonged to the company, and were upon said ground, and if they further believe from the evidence that Crawford agreed to purchase said material and property so offered, and did purchase the same, and that the rails were not in any way excepted from

such offer and sale, then Crawford was entitled to all the
property and material of the company upon said ground, in-
cluding the rails in question.   This instruction told the jury
that in making sale of its property, it was necessary for the
company to except the rails.   This is foreign to the contro-
versy, because there is no claim by the company that it did
expressly except the rails, but that it sold to Crawford cer-
tain materials, which were upon the base ball ground, and
that it did not include the rails in question, while Crawford
claims that the company sold him all the material or property
kept or stored upon the ground.   The question, therefore, for
the consideration of the jury, was, which theory was correct,
and not whether the company had sold to Crawford all the
material upon the ground, and excepted certain parts.    If
Crawford purchased all the material upon the ground, then
the company could not except the rails and fittings, and if it
did not sell Crawford all such material, but only certain por-
tions thereof, which was expressly designated, as defendant
claims, then it was not necessary to make any exception.
Therefore, this instruction was clearly calculated to mislead
the jury,

The court, at the instance of the defendant, gave to the jury
nine instructions, which appear to be correct, and a proper
presentation of the case.    The plaintiff seriously complains of
No. 5, but upon a careful examination of the instruction, hav-
ing a proper understanding of the case, it is not prejudicial
to him.   It must be borne in mind that this contract is not in
writing, but was made several days before payment, and the
giving of the receipt.   Therefore, the question is, what was
the contract between the parties ?   What was agreed upon ?
What property was embraced in it?   And when we correctly
determine this question, the fact that the receipt may contain
recitals or such language as would embrace other property,
cannot alter a contract which had already been made; and the
only purpose for which the receipt and check could be used
is to shed light upon what property was actually embraced by
the terms of the contract, when that question is unsettled and
in dispute between the parties·   Now, this check and receipt,
not being parts of the contract, cannot affect it, except for
the purpose of defining what the the terms of the contract
really were—not making new terms when once those terms

are ascertained.   In referring to the receipt for the check, specifying with particularity the property purchased, by using the words, "for the grand stand, bleechers stand, fences, buildings, etc.," followed by the general language, "embracing all the property of the undersigned situated on said lot," the jury were told in this instruction that the general words were to be construed as restricted in meaning to things of the same kind as those which were specifically enumerated, and that the receipt is not of itself to be interpreted as including the steel rails as a part of the property. This part of the instruction cannot be erroneous, because the receipt is not, of itself, to be interpreted as including the steel rails as a part of the property sold, for the reason already given, that if by the terms of the contract the property was not included, then in no way should the receipt be so construed or interpreted as to include it.   Then the jury are further told that if they believe that the check was read in full by Shirley, and not merely casually examined for the purpose of ascertaining whether it correctly stated the amount in the receipt, then the receipt and check are to be taken together as defining the property sold, and the following words in the check, "including all property of said Traction Company stored or kept on said ball park," would require the said papers to be interpreted as including the iron, so far as the legal construction of those papers is concerned.   But while the court instructs the jury that under such a state of facts the legal construction of the papers should be such as to include the rails, yet it is proper to tell the jury, as the court did here, that if the defendant's agent did not understand the rails to be included, which, of course, means at the time of the making of the contract, that then they should find for the defendant, because, no matter what the legal interpretation of the check and the receipt should be, yet they were given long after the contract was made, and could in no way alter or change it.

Our conclusion is, that the court instructed the jury fully and fairly upon the law of the case, and we see no error in its rulings in this respect.

Third: Should the court have set aside the verdict of the jury, and granted the defendant a new trial.   As has been observed, the evidence in this case is in direct conflict.   As this is so, it is purely a jury question, and inasmuch as the

jury has found a verdict in favor of the defendant, we cannot disturb it, unless it is so manifestly contrary to the evidence as to show that it was the result of bias, prejudice, or misapprehension of the facts. This we cannot say. There fore, the judgment of the circuit court is affirmed.

*Affirmed.*