# CHARLESTON

## McGRAW v. TRADER'S NATIONAL BANK.

Submitted June 13, 1908.   Decided December 15, 1908.

64    509
65    278

1. APPEAL AND ERROR—*Presumption—Demurrer.*
   A demurrer incorporated in the body of an answer, but not men-tioned or referred to in the caption thereof, or in any decree or order in the cause, will be regarded as not having been brought to the attention of the court, and treated as a fugitive paper.   (p. 510.)

2. SAME—*Presumption—Demurrer—Overruling.*
   When, however, the demurrer has been called to the attention of the court by some decree or order entered, and the court proceeds to final decree without judgment on the demurrer, the demurrer will be regarded as overruled, and the rights of the parties determined accordingly.   (p. 511.)

3. CONTRACT—*Legality of Objects—Appointment to Office of Receiver.*
   A contract to pay money to secure ones election or appointment to the office of special receiver in a pending cause, is illegal and void as against public policy, and will not be enforced in a court of equity.   (p. 514.)

4.  Account Stated—*Nature*.

> An account rendered becomes an account stated only when it has been examined by the parties, and the balance admitted, without having been paid; when paid it becomes a settled account. (p. 515.)

5.  Same—*Retaining Account — Rendered Without Objection—Banker and Customer*.

> The rule that an account rendered and retained for a long time without objection becomes an account stated is, as a general proposition, inapplicable in Virginia and West Virginia, except as between merchant and merchant, and principal and agent, with mutual accounts. Between banker and customer some superior equity must intervene in order to preclude the customer from objecting to an illegal and unauthorized charge against him. (p. 516.)

6.  Judgment—*On Consent—Right to Modify*.

> A consent decree cannot be limited, modified or changed, without the consent of the parties thereto. It is *res judicata* as to all matters settled and determined thereby. (p 517.)
> (Robinson, Judge, Absent.)

Appeal from Circuit Court, Taylor County.

Bill by John T. McGraw against Traders National Bank and others. From three decrees pronounced in this cause, the defendant Traders National Bank, appeals.

*Reversed.    Remanded.*

Melville D. Post, M. H. Dent, and G. H. A. Kunst, for appellees.

Millard F. Snider, and Warder & Robinson, for appellant.

Miller, Judge:

The defendant appeals from three decrees pronounced in this cause; the first, March 25, 1905, being a temporary order of injunction restraining the prosecution of four several suits at law; the second, June 20, 1905, referring the cause to a commissioner; and the third and final decree of January 10, 1907.

The object of the bill, was to secure a general accounting between plaintiff and defendant; a discovery of and accounting for certain stocks and bonds pledged to said bank as collateral security for liabilities of the plaintiff, including the notes and claim in the suits enjoined, and of the pro-

ceeds of the sale thereof; and particularly of the proceeds of the sale of 26 of the bonds of the Pocahontas Tanning Company; 50 shares of the stock of the American National Bank of Richmond; 25 shares of the capital stock of the Citizens Trust & Guaranty Company of Parkersburg; and 400 or 500 shares of the Watson Coal Company, which the bill alleged the plaintiff was entitled to have, and prayed might be returned to him by defendant.

The bill was taken for confessed at rules, except as to the American National Bank, not served.   This bank, however, as the order of reference recites, appeared by counsel in open court, but without filing a formal plea; and the court, June 20, 1905, referred the cause to a commissioner to audit and settle the account between plaintiff McGraw and defendant bank; to ascertain and report the amount due the bank from McGraw on the separate demands in the several suits enjoined; what credits or counter claims McGraw should be allowed against the same, and such other matters as the commissioner might deem pertinent, or that might be required by the parties.

The record shows that while the cause was pending before the commissioner, the defendant L. E. Sands, lodged in the papers of the cause his answer to the bill, sworn to by him October 19, 1905, the only specific allegations against him in the bill being that the said 26 bonds of the Pocahontas Tanning Company, which it is alleged therein were in the hands of said bank "as general security," had been sold by the bank to him on the —— day of ——, at 70 per centum of the face value, a price inadequately less than their true value, without the authority, knowledge or consent of the plaintiff, the full face value of which bonds the bill further alleges plaintiff will be entitled to recover from defendant upon a settlement of his accounts with it.

The answer of the bank, containing also a general demurrer, sworn to June 15, 1906, was not filed in court until June 16, 1906, after all testimony had been taken by the commissioner, and he had completed and filed his report in the Clerk's office, June 11, 1906.

The order of June 16, 1906, brings the cause on to be heard only on papers theretofore read, former orders and

decrees, report of said commissioner and the written exceptions of defendant bank thereto and the answer of the bank then filed, and being argued, the order recites, the court took time to consider the exceptions to the report of said commissioner. But neither in this order, or in any prior order or decree, or in the final decree appealed from is there any order or note of filing or disposition made of the answer of said Sands, or of the demurrer of the bank to the bill. In the final decree the exceptions of the plaintiff to the answer of the bank and of the bank to the commissioner's report are again noted and overruled.

The answer of said Sands, if we are permitted to treat it as a part of the record, simply negatives all knowledge of the circumstances and agreements relating to the pledging of said bonds alleged in the bill; denies he was purchaser thereof, but says that about the month of ———, 1904, at the urgent request of said bank and without compensation he negotiated a sale thereof, and pleads in bar of the present suit the former adjudication of the matters in controversy in relation to said bonds by the final decree of the circuit court of Harrison county, in a suit of the same plaintiff against him, said bank and others, a copy of the said decree therein being exhibited therewith. The answer of the bank puts in issue all material allegations of the bill; pleads the former adjudication of all matters in controversy relating to said bonds, by the final decree of the circuit court of Harrison county, in said former cause, exhibiting therewith a copy of the bill, final decree and other papers therein.

The final decree confirmed the report of said commissioner, found the several sums due said bank from plaintiff and others, on the several demands in said actions at law, after allowing plaintiff the several credits as found by the commissioner, and adjudged that the bank recover of the plaintiff the sum of $11,746.14, the balance found in its favor, with interest and costs; perpetuated the said injunction and dismissed the said actions at law.

The question presented on the demurrer to the bill, when eliminated, will leave but two questions of merit presented and argued here; and the disposition we shall make of them will necessarily involve the determination of all other errors assigned.

It is conceded upon the demurrer that there was no formal decree of adjudication thereon, but that subsequent proceedings in the cause, ignoring the demurrer contained in the answer, was equivalent to a decree or order adjudging the bill good on demurrer, entitling the defendant to the advantage thereof on account of any defect in the bill appearing here.

The paper in which the sufficiency of the bill is challenged, is entitled " The answer of the Traders National Bank," not answer and demurrer, and it is treated and referred to in the orders and decrees as an answer. We have recently decided that a "demurrer incorporated in the body of an answer, but not mentioned or referred to in the caption thereof, or any decree or order in the cause, will be disregarded as not having been brought to the attention of the court, and treated as a fugitive paper." *Pheasant* v. *Hanna*, 60 S. E. Rep. 618.

This rule applied here precludes any consideration of the demurrer as such. We must treat the case as if there was no demurrer. The rule is different where a demurrer has in fact been filed, and the attention of the court called specially to it by some order or decree, for then, as counsel argue, proceeding to final decree without judgment on the demurrer is equivalent to overruling it, and the right of the parties will be determined accordingly. *Fluharty* v. *Mills*, 49 W. Va. 446; Hogg's Eq. Proc., section 313.

If the demurrer had been formally filed and judgment given thereon against the demurrant, we would hold such judgment right. Two points are made by demurrant: first, that the bill showed plaintiff was endorser, not maker, of the notes sued on, and hence not entitled to enjoin suit thereon, on the pretense of an unsettled account between him and the bank; second, that the bill shows no such account between plaintiff and the bank as to give a court of equity jurisdiction for an accounting. The first point is answered by an amendment to the bill before appearance and without objection by defendants, charging "that plaintiff if primarily liable for such of the debts sued upon as principal debtor and not merely as surety and indorser and is therefore entitled to offset against the same any just claims

he may have against said Bank, of which fact the bank has always had full knowledge and so treated plaintiff.'' This amendment was clearly admissible under section 12, chapter 125, Code 1899.

On the second point demurrant relies on *LaFever* v. *Billmyer*, 5 W. Va. 33, and the rule of 1 Story, Eq. Jur., section 458a, and note. That rule is that, '' if a bill for an account in respect of particular items, fails to sustain the demand upon these particular items, the court will not permit a general vague charge that the accounts are voluminous and intricate, which is inserted mainly as a pretext for the purpose of bringing the case within the jurisdiction of a court of equity, to protect the bill against a demurrer for want of equity.'' We do not think this case falls within this rule. It is true the bill charges certain specific items as to which the plaintiff seeks an accounting, but is not amenable to the criticism of general vague charges as a pretext for sustaining equity jurisdiction. The plaintiff succeeded in obtaining the favorable report of the commissioner, and the decree of the court thereon, as to the last two items of the bill, and the bill is certainly specific enough, as a bill for discovery and an accounting, to give jurisdiction on demurrer thereto.

The appellant relies chiefly on two points of error assigned: First, the disallowance of an item of $1,000.00 charged against plaintiff in its account rendered in March, 1904, and designated as the '' Little Kanawha Lumber Co.'' item; and, second, the allowance to plaintiff of the item of $6,175.00, the difference between the par value of the twenty six bonds of the Pocahontas Tanning Company, and the proceeds of the sale thereof to defendant Sands.

The bank seeks to justify its charge of $1,000.00 on the ground that several years before the rendition of the account, the plaintiff being very desirous of being appointed one of the special receivers of the Little Kanawha Lumber Company, of which the bank was a large creditor, proposed to Sands, its Cashier, and Jackson, its President, that if the bank would aid him, and he should be appointed such receiver, he would, out of his commissions, as receiver, pay the bank $1,000.00 on account of its indebtedness against the Lumber Company.

The plaintiff in his bill, filed about a year after the rendition of the account, does not specifically challenge the correctness of this item, but in his testimony before the commissioner he says that in his judgment the charge is incorrect, that the Cashier, Sands, having died, he had seen Jackson, the President, who stated he knew nothing about the item.

On the part of the plaintiff it is argued that even if there was a contract between plaintiff and the bank, as to such item, it was void, on grounds of public policy, and was properly disallowed. For the bank it is said that although originally the agreement may have been void, yet inasmuch as the plaintiff got the benefit of it, in securing his appointment as receiver, and the item was charged against him in the account rendered more than a year before the bill was filed, the court must treat the account as a stated account, or as an account settled; that the contract, though illegal, was thereby consummated by the parties, and that a court of equity should not lend its aid to either party, in relieving him from the effects of such illegal contract. For plaintiff it is replied that this is not a suit to surcharge and falsify a settled, or stated account, but for an original accounting, and that it is not required in such a case that particular items thereof should be surcharged and falsified.

That such a contract is illegal and void, we think there can be no question. It has been laid down by text writers, on the authority of many decided cases, that contracts for the election or appointment of a person to an office or to secure the support of one for office are invalid. The contract here in question is of that character. 1 Page on Contracts, section 410; *Meguire* v. *Corwine*, 101 U. S. 108, and numerous cases collated in Rose's notes thereto. *West* v. *Camden*, 135 U. S. 507, and Rose's notes thereto.

But has the account rendered, including this illegal item, become an account stated, or an account settled, precluding the plaintiff from correction thereof? An account rendered becomes an account stated only when it has been examined by the parties and the balance admitted, without having been paid. When the balance thus admitted is paid the account is regarded a settled account. *McCarty* v.

*Chalfant*, 14 W. Va. 531. It is not pretended that the items in this account were gone over and a balance struck and agreed to so as to bring the case within the rule of this authority; but it is claimed by the bank that having rendered the plaintiff the account, by retaining it without objection for so long a time, it became an account stated. This seems to be the rule in Virginia and West Virginia, as between merchant and merchant, and principal and agent, with mutual accounts. *Ruffner* v. *Hewitt*, 7 W. Va. 585; *Robertson* v. *Wright*, 17 Grat. 535; *Shrewsbury* v. *Tufts*, 41 W. Va. 212.

But we do not think the rule applicable, as a general proposition, to transactions between banker and customer. Moreover, it does not clearly appear that no objection was made by plaintiff to this item; he does not seem to have clearly understood it. It is stated in the account in rather indefinite and uncertain terms. Besides he seems to have been endeavoring from the date of the rendition of this account to the date suit was instituted to obtain from the bank information as to what disposition had been made of his securities. The bank was, for a part of the time at least, in the hands of a receiver, regarded as insolvent, and pending the administration of the receiver, and before its re-organization, supplementary statements were rendered, the last one a short time before the institution of the suit. We do not think, therefore, from these facts, and other evidence in the case, that the plaintiff can be said to have agreed to or acquiesced in the charge of this illegal item, precluding him from the benefit of the finding of the commissioner and the decree of the court in his favor, because he failed to specifically surcharge and falsify this item in the bill.

In a bill for a general accounting such specific pleading is not required; it is sufficient to show the relation of the parties which entitles complainant to the relief, and a general statement of the matters pertaining to which the accounting is sought will be sufficient. 1 Cyc. 436; *Northern Grain Co.* v. *Pierce*, 13 S. D. 265.

The relation of banker and customer is clearly set forth in the bill in this case. As between banker and customer, some superior equity would have to intervene between them

to preclude the customer from objecting to illegal items charged against him.   Morse Banks and Banking, section 291*e*, section 291*f*.   Nothing of that kind is shown here.

But should the court refuse its aid to plaintiff respecting this item, because of the illegality of the contract? If the plaintiff had at the time of the agreement voluntarily paid the consideration, or had he directed the bank to charge the same against him in his account, and agreed that any of the proceeds of the sale of his securities pledged should be thus applied, the court would leave him where he had thus placed himself; but the facts do not present that kind of a case.   The sole question here is whether the bank, without the plaintiff's authority and direction, could lawfully charge the item against him in his account, as was done.   We think not, and that the finding of the Commissioner and the decree of the court was right in disallowing it.

With respect to the credit of $6,175.00, we think the finding of the Commissioner, and the decree of the court, was clearly wrong.   Whatever may have been the original rights of the parties, the plaintiff was clearly barred as to any rights of action by the decree of the circuit court of Harrison county, pronounced on the 4th day of June, 1904, in the suit instituted by him against the bank, and involving the very same controversy presented here.   The bill in that case, was in effect a bill to redeem the bonds sold to Sands; the decree thereon a consent decree.   It was not questioned that the bank was entitled to hold the bonds as collateral security; the pretention of the plaintiff was, that they had been sold for an inadequate price without his consent or notice to him.   By that decree, John W. Davis was appointed a special receiver of the bonds, and Sands, the defendant, was directed to deliver over the bonds to him; and it was adjudged and decreed that the plaintiff should pay Sands, on or before the 25th day of June, 1904, and at an hour not later than three o'clock P. M. of that day, in redemption of the bonds, the sum of $18,525.00, with interest thereon from December 22nd, 1903, the sum paid by said Sands to the bank therefor; and should he fail therein, it was further decreed that the special receiver

should thereupon return the bonds to the said Sands, the injunction theretofore granted be dissolved, and that the complainant be forever thereafter barred of every right and title to said bonds by reason of any claim made by him under any of the allegations of his bill, and that his bill should be dismissed.

The record clearly shows that the plaintiff failed to make payment as decreed, and upon a report of this fact, made to the court by the special receiver, on April 24, 1905, his report was confirmed by the court; and the petition of the plaintiff then filed in that cause praying that in the order dismissing the suit provision should be made that the same be without prejudice to the petitioner in maintaining this suit, was rejected, the court declining, and rightly declining, to make any such adjudication. The decree being a consent decree, the court could not thus limit its effect, or modify or change the same without the consent of the other party. *Manion* v. *Fahy*, 11 W. Va. 482; *Morris* v. *Peyton*, 29 W. Va. 201; *Stewart* v. *Stewart*, 40 W. Va. 65; *Seiler* v. *Union Mfg. Co.*, 50 W. Va. 208. Previous decisions of this Court on the subject of former adjudications are so full and complete as to render it unnecessary, on this occasion, to do more than refer to them.

Our conclusion is that the court below erred in overruling appellants second exception to the commissioner's report, respecting the credit of $6,175.00 allowed plaintiff; that said exception should be sustained, the report of the commissioner corrected in this particular, and when so corrected that there should be decrees in favor of appellant against said McGraw and others liable with him for the correct balances thus to be found due from them. We are also of opinion that on dismissal of said suits at law, which were rightfully instituted, said bank is entitled to judgments for costs incurred therein against said McGraw.

We therefore reverse the final decree of January 10, 1907, and remand the cause to the circuit court, to be therein further proceeded with in accordance herewith, and further according to principles governing courts of equity.

*Reversed and Remanded.* ·