# CHARLESTON.

BENT *v.* BARNES *et als.*

Submitted September 12, 1911.   Decided March 11, 1913.

EQUITY—*Jurisdiction—Grounds.*

In consideration that J. B. would build a good road across a triangular piece of C. B.'s land, C. B. agreed in writing to grant to him the small triangle cut off by the road, which, as stipulated in the agreement, was to be located seven rods from the apex of the triangle, thus forming a small triangle estimated to contain about seventeen square rods. J. B., without the knowledge of C. B., built the road at a place much farther than seven rods from the apex of the triangle, and thereby cut off a triangle containing more than sixty square rods. After the road had been built, but without knowledge of its location, C. B. conveyed to T. the entire tract of land, describing it by metes and bounds, and, by express reference to the agreement, excepted from the operation of the grant the part that he was bound to grant to J. B. The agreement between C. B. and J. B. was not recorded, and, at the time of his purchase, T. had not seen it, but knew where the road had been built by J. B. Being thereafter advised that the road had not been built in the place agreed upon, T. closed up the road; whereupon J. B. sued him, and obtained an injunction, perpetually enjoining T. from closing up the road, and commanding him to remove the obstruction which he had placed in it. C. B. was not a party to that suit. Continuing to claim title to all of the triangle cut off by the road, but not included in the aforesaid agreement, T. took possession of the same, and J. B. then brought this suit against

72 W. Va.

both C. B. and T., to compel C. B. to convey to him the legal title to all the triangle of land cut off by the road, and to enjoin T. from prosecuting a threatened action of ejectment, and from committing numerous, continuous and petty alleged acts of trespass on the land. HELD:

I. That the bill was good on demurrer. (p. 165).

II. That the former adjudication does not estop T. from claiming title to a part of the triangular piece of land. (p. 165).

III. That the written agreement, and not the actual location of the road, must determine what is the dividing line between the land conveyed by C. B. to T., and what he had previously agreed to convey to J. B. (p. 166).

IV. That C. B. is bound to convey to J. B. only so much land as is included in the written agreement. (p. 166).

V. That, as a general rule, equity will not enjoin a mere naked trespass to realty; yet, if the acts are repeated and continuous, and so trifling in character that the damages recoverable at law for each act would be small when compared with the expense of prosecuting separate actions, equity will enjoin their threatened commission, owing to the inadequacy of legal remedy. (p. 165).

Appeal from Circuit Court, Randolph County.

Bill in equity by James A. Bent against P. Clarence Barnes and another. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Harding & Harding,* for appellant.
*W. E. Baker,* for appellees.

WILLIAMS, JUDGE:

James A. Bent was the owner of two tracts of land, rectangular in form, which touched at their respective northwest and southwest angles. P. Clarence Barnes was the owner of an adjoining tract, which terminated in a sharp triangle having its apex at the corner common to the two Bent tracts. One of Bent's tracts bordered on a public highway called the Seneca Road, and the other was separated from it, and also from the road, by the above described triangle, across which a way was necessary for Bent to reach one of his tracts from the Seneca Road. In view of this situation, Bent procured from Barnes the following writing, viz.:

"It is agreed by and between P. Clarence Barnes, of Allegheny County, Maryland, and James A. Bent, of Elkins, West Virginia, that in consideration of the said James A. Bent making a good substantial public road between his land and the Seneca road, through the lands of the said P. Clarence Barnes near the stream, that the said P. Clarence Barnes hereby agrees to convey to the said Bent the triangular piece of land lying on the west end of his land, seven rods long and five rods wide where it adjoins said road to be constructed; the same containing about seventeen square rods. The said James A. Bent agreeing that the said road shall be constructed within one month from the date hereof, and that it shall at all times open to the said P. Clarence Barnes and the public generally.

Witness our hands and seals this 26th day of March, 1903.

P. CLARENCE BARNES  [SEAL]

JAMES A. BENT        [SEAL]"

Within the time specified, Bent constructed a road across the triangle, but located it at a much greater distance from the apex of the triangle than seven rods. The triangle cut off by the road contained sixty, or more, square rods, instead of seventeen as in the contract stipulated. Barnes never saw the land after the road was made. The contract was executed at Cumberland, Maryland, the place of Barnes' residence. On June 22, 1903, Barnes and his wife conveyed his tract of land to the defendant, Vincenzo Trimboli, describing it by metes and bounds, but made the following exception, viz.: "Save and excepting therefrom a narrow strip triangle in form on the western end of said land which by agreement between James A. Bent and the grantors hereof executed in March, 1903, was granted for a public road to be at all times open to the proprietor of this land and the public generally." It appears that Trimboli knew where the road was, at the time he bought; but the contract between Bent and Barnes had never been recorded, and he had not seen it before he bought and paid for the land. Later, however, he seems to have been advised that the Bent road cut off more of the apex of the triangle of his land than the agreement authorized; and he then asserted claim to all of the triangle except the part described in the written agreement, and closed up the road. Bent then brought a suit to enjoin Trimboli from inter-

fering with the road and to compel him to remove the obstructions which he had placed in it. A temporary injunction was awarded, but later dissolved by the circuit court of Randolph county, and his bill dismissed. Bent then appealed, and obtained a reversal of that decree, and a decree by this Court perpetually enjoining Trimboli from interfering in any manner with his use of the road, and requiring Trimboli to remove all obstructions which he had placed in it. 61 W. Va. 509. Barnes was not a party to that suit. Notwithstanding the result of that suit, Trimboli, still claiming the greater part of the triangle cut off by the road, continued to make use of so much of it as lay between the road and a line parallel to it, seven rods from the apex of the triangle; and Bent brought the present suit to compel Trimboli to remove structures and material from the land, which he had placed upon it, and to enjoin him from prosecuting a threatened action of ejectment against plaintiff, and from committing other threatened and petty acts of alleged trespass. The bill alleges that plaintiff was in possession of the land and that Trimboli, "violently and wrongfully, and secretly in the night time, attempted to take and did take, possession of said land, and then and there tore down the plaintiff's said fence, bars and gates, on said land"; and further alleges that Trimboli is threatening to institute an action of ejectment against plaintiff, and is now building houses and shanties on the land. Barnes is made a party, and the bill prays that he be compelled to convey to plaintiff all of the triangular piece of land west of the road. Trimboli and Barnes both answered and general replications thereto were made, and depositions were taken and filed by Bent and Trimboli. The bill also exhibits the record in the former suit. The cause was finally heard on the 26th of February, 1910, and a final decree made, whereby Barnes was required to execute to Bent a deed for seventeen square rods at the apex of the triangle, describing it; dissolving the preliminary injunction restraining Trimboli from trespassing upon the land, which had been granted in the mean time; and dismissing the bill, so far as it sought relief against Trimboli. Bent has appealed from that decree.

It is urged that the demurrer to the bill should have been sustained. The court did not directly pass upon it, but it was,

in effect, overruled by the final decree. *Dimmack* v. *Wheeling Traction Co.*, 58 W. Va. 226; *McGraw* v. *Bank*, 64 W. Va. 509. The bill is good on demurrer. Bent's only relief was in equity. ·He claimed the land by virtue of his agreement with Barnes, which gave him only an equity in the land; and he could neither successfully prosecute or defend an action of ejectment on his equitable claim. His suit was to get in the legal title from Barnes, and Trimboli was a necessary party, because he claimed the same land by deed from Barnes, and was alleged to be in possession of it. Having jurisdiction of the cause and the parties, equity could administer full and complete relief. It could prevent, by injunction, the commission of such acts of trespass upon the land for which the law does not afford an adequate remedy. And while it is true, as a general rule, that equity will not enjoin a mere naked trespass to realty, yet if the acts are repeated and continuous and are so trifling in character that the damages recoverable at law for each act would be small when compared with the expense of prosecuting separate actions therefor, equity will grant relief by injunction, owing to the inadequacy of the legal remedy. 1 High on Injunction (4th ed.) secs. 697 and 702a; *Miller* v. *Wills*, 95 Va. 337; *Callaway* v. *Webster*, 98 Va. 790; *Lembeck* v. *Nye*, 47 Ohio St. 336; *Edwards* v. *Haeger*, 180 Ill. 99; *Mills* v. *New Orleans S. Co.* (Miss.), 7 Am. St. Rep. 671; *New York, N. H. & H. R. Co.* v. *Scovill*, 71 Conn. 136, 42 L. R. A. 157; *Boston & Maine R. R.* v. *Sullivan*, 177 Mass. 230, 58 N. E. 689; *Pholman* v. *Evangelical Lutheran Trinity Church*, 60 Neb. 364; and *McClellan* v. *Taylor*, 54 S. C. 430.

The principal question is, is Bent entitled to a conveyance from Barnes for all the land west of his road; or is he entitled to only seventeen rods at the apex of the triangle? If he is entitled to all west of the road, it follows that the decree is not only erroneous, in that it fails to compel Barnes to make him a deed for that much, but it is erroneous, in that it dissolved the preliminary injunction against Trimboli to prevent his repeated acts of trespass upon it. But if he is entitled to only so much as the court below found him entitled to, then the decree is right in all respects, and must be affirmed.

It is evident that Barnes conveyed all of his land to Trimboli

except what he had previously agreed to convey to Bent. It, therefore, follows that Barnes has legal title to only so much as Bent has equitable title to, by virtue of his contract with Barnes. Barnes has parted with all his interest in the land, either to Trimboli or to Bent. And it is insisted by appellant that the decree in the former suit is an adjudication of the questions in the present suit. But we do not think so. Looking to the bill in the former suit, we find that the title to the land was not involved. Only the right to the free and unobstructed use of the road, where Bent had constructed it, was there litigated. Barnes was not made a party, and no relief against him was sought. Therefore, the decree in that suit is, in no sense, an adjudication against Barnes. But, having parted with all beneficial interest in the land, it is now immaterial to him where the road is in fact located; but, in no view of the case, can he be compelled to do more than he agreed to do. At the time he conveyed the land to Trimboli, he did not know where Bent had built the road, but he was careful to except from the operation of the deed the small piece that he had previously agreed to convey to Bent for a public road. Having now no interest in the land, Barnes can have no interest in the location of the road, further than it may serve as matter of description, to determine the line by which he should convey to Bent. There is no effort by defendants in this suit to have the road relocated, nor could it be done if they desired it. It is now only an evidenciary matter. But Barnes stands upon the written agreement, and Bent could not change its effect, without his consent, by building his road in the wrong place. He could not thus compel Barnes to grant him more land than he had agreed to grant him. So that, notwithstanding the location of the road is *res judicata,* it still does not define the eastern boundary line of the triangle which Barnes should convey to Bent, unless located according to the agreement. Barnes can only be compelled to comply with his written agreement; it must control. By it he bound himself to convey to Bent the "triangular piece of land lying on the west end of his land, seven rods long and five rods wide where it joins said road *to be constructed;* the same containing about seventeen square rods." As between Bent and Barnes, this contract must determine where the road should be;

and when that is ascertained, it necessarily becomes the property line between Bent and Trimboli; for Barnes conveyed to Trimboli the land up to that line, and not the land up to the road located at any place Bent may have seen fit to locate it. It is proven that Bent built the road very much farther from the apex of the triangle than seven rods, and thereby cut off more than sixty square rods, instead of about seventeen, as provided in the contract. There is much conflicting evidence, and it would be an useless task to review it in this opinion. It suffices to say that we have carefully read and considered it, and we think it is fully proven that the road was not located where it should have been. Two important facts are clearly proven, and not denied. One is, that when Trimboli bought from Barnes he knew of an agreement between Bent and Barnes, and knew where Bent had built the road, but he had not seen the agreement, and, therefore, did not then know whether Bent had violated it or not. The other is that, at that time, Barnes did not know that the road had been built. Hence he referred to the agreement with Bent, instead of the road, to define the boundary of the land which he excepted from his grant to Trimboli. So that, even if Trimboli then actually believed he was getting the land only up to the road, he is not thereby estopped from claiming title to all his deed actually gives him. That is a matter between Trimboli and his grantor, and not a matter of which Bent can claim any advantage, for he has right to only so much land as his contract with Barnes gives him. Finding no error in the decree, it will be affirmed.

*Affirmed.*