### HUGGINS v. COMMERCIAL & SAVINGS BANK

#### (140 S. E., 177)

1. ACCOUNT STATED—RULE THAT ACCOUNT NOT OBJECTED TO WITHIN REASONABLE TIME BECOMES "ACCOUNT STATED" REFERS ONLY TO ACCOUNTS WHICH MAY BECOME ACCOUNTS STATED.—General rule that account rendered and not objected to within reasonable time becomes an account stated refers only to such accounts as may become accounts stated.

2. ACCOUNT STATED—EVIDENCE OF DEPOSITOR'S RETENTION OF STATEMENTS OR PASSBOOK WITHOUT NOTICE OF OBJECTION THERETO IS ADMISSIBLE TO SHOW IMPLIED ADMISSION OF ACCOUNT'S CORRECTNESS.—Evidence of retention by depositor of statements or passbook of bank after reasonable time for examination without notice to bank of objection thereto is admissible to show implied admission of an acquiescence in account's correctness.

3. BANKS AND BANKING—BANK HAS PRIMARY DUTY TO GUARD DEPOSITOR'S MONEY AND RETURN IT ON PROPER DEMAND.—It is primary duty of bank to carefully guard money of depositors and be ever ready to return deposits on proper demand.

4. BANKS AND BANKING—IF DEPOSITOR'S MONEY IS LOST THROUGH FRAUD OR NEGLIGENCE OF BANK'S AGENT, BANK IS LIABLE.—If depositor's money is lost through either fraud or negligence of agent of bank, bank is liable for loss sustained, and even without fraud or negligence bank is usually liable.

5. EVIDENCE—SUPREME COURT CAN TAKE JUDICIAL NOTICE THAT BANKS ADVERTISE THAT MONEY PLACED WITH THEM WILL BE SAFE AND SECURE.—The Supreme Court can take judicial notice that banking institutions advertise that money placed with them will be handled with safety and security.

6. ACCOUNT STATED—DEPOSITOR WAS NOT REQUIRED FIRST TO GO INTO EQUITY TO SURCHARGE ACCOUNT STATED BEFORE BRINGING SUIT THEREON AGAINST ASSIGNEE OF BANK.—Where assets of bank of deposit were transferred to defendant bank, in depositor's suit against transferee to recover named sum deposited with bank, plaintiff was not required first to go into equity to surcharge account as preliminary to recovery against transferee.

7. BANKS AND BANKING—DEPOSITOR HELD NOT ESTOPPED TO RECOVER DEPOSIT AGAINST TRANSFEREE OF BANK FOR NEGLIGENCE IN NOT EXAMINING BANK'S STATEMENT, WHERE PASSBOOK WAS CONCLUSIVE EVIDENCE OF DEPOSIT.—In action to recover deposit in bank which

transferred all its assets to defendant bank, depositor was not estopped from bringing action against transferee because of his negligence in failing to examine monthly statements of deposit bank to see if his deposit had been entered thereon, where his passbook in which deposit was entered was conclusive evidence of entry.

8. BANKS AND BANKING—WHETHER TRANSFEREE BANK WAS ENRICHED AT DEPOSITOR'S EXPENSE SUFFICIENTLY TO SUSTAIN ACTION ON QUANTUM MERUIT HELD, UNDER EVIDENCE FOR JURY.—In action to recover deposit in bank which transferred its assets to defendant bank, whether transferee bank was enriched unjustly at plaintiff's expense sufficiently to sustain action on *quantum meruit held,* under evidence, for jury.

9. BANKS AND BANKING—EVIDENCE HELD NOT TO SHOW TRANSFEREE BANK WAS BONA FIDE PURCHASER OF ASSETS OF BANK OF DEPOSIT FOR VALUE, WITHOUT NOTICE.—In depositor's action to recover deposit from bank to which assets of bank of deposit were transferred, evidence *held* to show that transferee bank was not a bona fide purchaser of assets of bank of deposit for value, without notice.

10. BANKS AND BANKING—WHETHER CONTRACT RELIEVED TRANSFEREE BANK OF LIABILITY TO PAY DEPOSIT OF PLAINTIFF IN TRANSFEROR BANK HELD, UNDER EVIDENCE, FOR JURY.—In action to recover a deposit against bank to which assets of bank of deposit were transferred, whether contract between banks for transfer of assets relieved transferee bank of liability to plaintiff *held,* under evidence, for jury.

11. NEW TRIAL—REFUSAL OF NEW TRIAL FOR SURPRISE HELD WITHIN DISCRETION, WHERE DEFENDANT'S REQUEST THEREFOR WAS NOT MADE UNTIL ADVERSE VERDICT WAS RENDERED.—In action to recover a deposit from bank to which assets of bank of deposit were transferred, refusal of defendant's motion for new trial for surprise in ruling of presiding Judge was within discretion, where request therefor was not made until verdict adverse to defendant had been rendered.

12. TRIAL—IF COMPLAINT AT LAW STATES CAUSE OF ACTION AND PLAINTIFF SUBMITS EVIDENCE ESTABLISHING ALLEGATIONS, TRIAL JUDGE MUST SUBMIT CASE TO JURY.—If complaint in law action states legal cause of action and plaintiff submits any evidence establishing material allegations thereof, it is trial Judge's duty to submit case to jury.

Before RICE, J., Florence, November, 1924.    Affirmed.

Action by M. B. Huggins against the Commercial & Savings Bank of Timmonsville. From a judgment for plaintiff, defendant appeals.

The complaint, answer, contract of October 5, 1922, Judge's ruling on motion for directed verdict, and the exceptions are as follows:

## COMPLAINT

The plaintiff above named, complaining of the defendant herein, alleges:

I. That heretofore before and on the 16th day of August, 1919, the Citizens' Bank of Timmonsville, S. C., was a corporation created under the laws of the State of South Carolina, owning, maintaining, and operating a general banking business in the Town of Timmonsville, in the County of Florence, and said State.

II. That on the said 16th day of August, 1919, the plaintiff herein in the usual and ordinary course of the conduct of his business with the said Citizens' Bank, as one of its depositors, placed on deposit with and in the said bank the full and just sum of $3,000.00.

III. That plaintiff has never at any time received the said $3,000.00, nor has any check of the plaintiff therefor ever been presented to the said bank or paid by it to any person whomsover.

IV. That heretofore on or about the 20th day of January, 1923, the said Citizens' Bank of Timmonsville, being embarrassed and in imminent danger of insolvency, transferred, turned over and delivered unto the defendant herein, the Commercial & Savings Bank, a corporation created and existing under the laws of the State of South Carolina, all of its assets, including the $3,000.00 of the plaintiff on deposit, so as aforesaid.

V. That plaintiff has repeatedly demanded from the said defendant the refund or payment of the said deposit of $3,-

000.00, which has been refused, and no part of which has been paid by discount or otherwise.

VI. That because of the foregoing facts, the defendant herein is justly and truly indebted to the plaintiff in the sum of $3,000.00, together with interest thereon at 7 per cent. per annum.

Wherefore, plaintiff demands judgment against the defendant.

First. For the aforesaid sum of $3,000.00, with interest thereon at the rate of 7 per cent. per annum, and for the costs and expenses of this action, and for such further relief as may be just.

## Answer

The defendant, answering the complaint herein: (1) Denies each and every allegation therein contained.

## Ruling On Motion for Directed Verdict

It seems to me, and I have read this case pretty closely, that it would be inequitable and unjust that the defendant in this case should be allowed to get possession of all assets of the Citizens' Bank and not be liable, at least to the extent of the assets that came in their hands for the debts of the bank; or as in this case to a depositor, if he was a depositor. I do not think there is any Court that is going to hold—our Supreme Court or any other Court—is going to hold that under these circumstances the defendant in this case could take over all the assets of the Citizens' Bank and not be liable to the depositors. If this man was a depositor, then he had the same rights that any other depositor had, and if they could do that and not account to him, that is, take the assets out or his reach, then they could take the entire assets away from all the depositors. It is true, there is an agreement here in which, as between the parties themselves, the Citizens' Bank and the Commercial & Savings Bank, wherein they have undertaken to

limit their liabilities to the amounts of the deposits that are set out here in this agreement. There is no doubt in my mind that that agreement was entered into in entire good faith between the Citizens' Bank and the defendant in this case. There is no doubt that they thought that that was all of the deposits, but I don't think that alters the case so far as this plaintiff is concerned, because, as I said a moment ago, if the bank would enter into an agreement with another corporation and place all of its assets in such a position that none of their creditors could get their hands on it, it couldn't do it any more in the case of this man than it could in the case of all of them; and whether that was done intentionally or unintentionally I do not think it makes any difference. The defendant in this case knew what it was going into when they went into it; they knew the condition of the bank, because they had expert accountants looking into it; they knew there might be claimants that would arise that they could not foresee; that some of these assets might slip through; and in order to protect themselves they required an amount of $75,000.00 to be put up to protect them. Now, it is true, they didn't take over the franchise of this other bank, but under the evidence I got that bank is just as dead as it ever will be. As I got the evidence, no depositor or any other creditor can get anything out of it. Here is an agreement to take over everything of value that that bank owned.

Now, under these conditions, it seems to me it would be inequitable and unjust to hold that the defendant in this case should have no remedy against the Commercial & Savings Bank to the extent of the assets which came into the hands of the defendant, and no further; and for this reason I cannot bring my conscience to the point where I think that the plaintiff should go out of Court with nothing, unless the jury says so.

It is true, he testified that as far as the books of the bank are concerned the sum of $6,000.00 must have been paid in

. the new Commercial Bank, and it is a little strange to me that this thing ran on so long without his making any complaint about it, but that is a matter the jury will have to determine; and I am going to submit to this jury that at the time the Commercial & Savings Bank took over these assets whether this plaintiff had a deposit of $3,000.00. If he did, he had title to $3,000.00; if he did not, he is not entitled to anything.

If a bank can do that with respect to one depositor, it can do it to all. All the assets of this bank, so far as this plaintiff is concerned, were placed beyond this man's reach, and I am not going to hold that that is just or right. The motion is refused.

## The Contract

### *Defendant's Exhibit No. 1*

State of South Carolina, County of Florence.

This agreement, made and entered into, in duplicate, this 5th day of October, 1922, by and between the Citizens' Bank, a corporation under the laws of the State of South Carolina, with its principal office at Timmonsville, in said State, first party, and Commercial & Savings Bank, a corporation under the laws of the State of South Carolina, with its principal office at Florence, in said State, second party, witnesseth:

Whereas, the directors and stockholders of first party on the 3d day of October, 1922, entered into an agreement with second party wherein they covenanted and agreed to have first party execute and deliver all instruments of writing of every nature and kind that might be necessary to transfer and convey to second party title to all of the assets of first party, in consideration of the assumption by second party of the liability of first party to its depositors and the holders of its bills payable; and,

Whereas, resolutions to this effect have been adopted

by both the directors and the stockholders of first party, and first party by its proper officers in and by such resolutions has been authorized and directed to execute the necessary transfers to carry out in detail the terms of said contract, all of which will appear more fully and at large from certified copies of said resolutions hereto attached and made a part of this agreement:

Now, therefore, in pursuance of the said agreement and in consideration of the covenants hereinafter contained to be performed by second party, and in further consideration of the sum of $5.00 to it in hand paid by second party, the receipt whereof is hereby acknowledged, first party has bargained and sold, granted and conveyed, transferred and delivered, and by these presents does bargain and sell, grant and convey, transfer and deliver unto second party, its successors and assigns, all and singular, the assets of first party, consisting of cash, notes, bonds, mortgages, stocks, choses in action, and collateral securities of every kind, and any and all personal property of any nature or kind owned by first party, or in which it may be interested, and wheresoever the same may be found, except its banking house, furniture and fixtures, stationery and office appliances in its banking house in Timmonsville, S. C., which are to be transferred by a separate deed, to have and to hold all of the said assets unto the second party, its successors and assigns, forever.

And the first party, for itself and its successors and assigns, does covenant and agree with second party to warrant and defend the said described assets hereby transferred unto the second party, its successors and assigns, forever, against it and all persons whomsoever.

And in consideration of the transfer to it of all of the assets of first party hereinabove mentioned, the second party for itself, its successors, and assigns, does covenant and agree with the first party that it will and does hereby assume the obligation of paying the bills payable and the depositors of

first party in full, but no other obligations of said first party, the extent of this obligation being that set forth in the schedule shown in the statement of the Citizens' Bank, Timmonsville, S. C., at the close of business, October 3, 1922, signed by D. J. Winn, which statement is attached hereto and made a part of this contract.

In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written. The Citizens' Bank, by C. Ray Smith, President.   Signed, sealed and delivered in the presence of: F. B. Beard, Henry E. Davis.   Attest: D. J. Winn, Cashier.   Commercial & Savings Bank, by Frank J. Brand, President.   Attest: J. R. Clemmons, Cashier.   D. H. Smith.   R. R. Stuckey.

(Properly probated and recorded.)

## EXCEPTIONS

I. The Court erred in refusing defendant's motion for a directed verdict, made at the conclusion of the case, for the reasons stated as the grounds of said motion, which were as follows:

(1) In that if the plaintiff ever deposited, in August, 1919, as he alleges in his complaint and testifies, the sum of $3,-000.00 in the Citizens' Bank of Timmonsville, this constituted between him and that bank the relation of debtor and creditor, and under the express contract entered into between the Commercial & Savings Bank and the Citizens' Bank of Timmonsville, the Commercial & Savings Bank did not assume, but expressly refused to assume, liability for any deposit or any relation of debtor and creditor shown by deposits other than deposits embraced within the sum specified in the schedule attached to said contract.

(2) In that the plaintiff, by reason of his laches in failing to make any contention with reference to the error in his account for a long period of time and until after the Citizens' Bank had transferred its assets to the Commercial

& Savings Bank, is estopped from bringing his suit against the Commercial & Savings Bank.

(3) In that there is no proof that the defendant ever received or came into the possession of the deposit upon which suit is brought, and, therefore, plaintiff under no theory of the case can recover.

(4) In that the evidence shows that defendant is a purchaser for value, without notice of plaintiff's claim, and is not liable therefor.

(5) In that plaintiff's negligence in failing to question his account until after defendant had acquired the assets of the Citizens' Bank prevents his recovery in this case.

II. The Court erred in refusing defendant's motion for a new trial for the reasons stated as the grounds of said motion, which were as follows:

(1) In that if the plaintiff ever deposited, in August, 1919, as he alleges in his complaint and testifies, the sum of $3,000.00 in the Citizens' Bank of Timmonsville, this constituted between him and that bank the relation of debtor and creditor, and under the express contract entered into between the Commercial & Savings Bank and the Citizens' Bank of Timmonsville, the Commercial & Savings Bank did not assume, but expressly refused to assume, liability for any deposit or any relation of debtor and creditor shown by deposits other than deposits embraced within the sum specified in the schedule attached to said contract.

(2) In that the plaintiff, by reason of his laches in failing to make any contention with reference to the error in his account for a long period of time and until after the Citizens' Bank had transferred its assets to the Commercial & Savings Bank, is estopped from bringing his suit against the Commercial & Savings Bank.

(3) In that there is no proof that the defendant ever received or came into the possession of the deposit upon which suit is brought, and, therefore, plaintiff under no theory of the case can recover.

(4) In that the evidence shows that defendant is a purchaser for value, without notice of plaintiff's claim, and is not liable therefor.

(5) In that plaintiff's negligence in failing to question his account until after defendant had acquired the assets of the Citizens' Bank prevents his recovery in this case.

(6) In that the Court erred in holding, as a matter of law, that the provision in the contract between defendant and Citizens' Bank whereby defendant assumed liability for only the amount of deposits appearing in the schedule attached to the contract, it being admitted by plaintiff that he got all of his share of the deposits so assumed, was void as against public policy as to the deposit of plaintiff in suit, which was alleged to have been placed in the selling bank three years prior to the transfer, and that defendant by taking over the assets of the selling bank became liable for such alleged deposit.

(7) In that there was no privity of contract between plaintiff and defendant, and the only theory on which plaintiff could have the right to recover against defendant on the law side of the Court would be for money had and received, and there is no evidence upon which such an action can be sustained.

(8) In that if plaintiff has any right to sue defendant as the purchaser of the assets of Citizens' Bank, he cannot bring and maintain against it this suit on the law side of the Court for a deposit alleged to have been made in Citizens' Bank years before the transfer, but his remedy, if any he has, is to proceed by bill in equity against defendant to subject the assets coming into its hands to the payment of his demand.

(9) In that the action of the Court in holding void as against public policy as to the deposit of plaintiff alleged in the complaint the contract on which defendant relied as a complete defense to a recovery took the defendant completely by surprise when it was too late to procure and pre-

sent evidence showing the payment of the alleged deposit by Citizens' Bank before the transfer,·the procuring the·presentation of such evidence involving an audit of books not in defendant's possession, and that by reason thereof the Court should in furtherance of justice set aside the verdict so as to enable the defendant to procure and present such evidence.

*Messrs. Davis & Sharkey,* for appellant, cite: *Liability of purchasing corporation for debts of selling corporation:* 128 S. C., 428. *Duty of depositor to examine statement of account, failure to complain of error within reasonable time is conclusive evidence of the correctness of the account:* 282 Fed., 121; 117 U. S., 96; 29 L. Ed., 811; 4 Ohio St., 667. *If one of two innocent persons must suffer by the fraud of another, he must bear the loss whose negligence makes the fraud possible:* 92 S. C., 329. *When suit on quantum meruit may be maintained:* 73 S. C., 83. *"Bona fide purchaser":* Sec. 745, Pom. Eq. Jur. *Purchasing contract at bar not against public policy:* 176 U. S., 505; 44 L. Ed., 564; 85 S. C., 405; 128· S. C., 428.

*Mr. Philip H. Arrowsmith,* for respondent, cites: *Purchasing company held liable for debts of selling corporation:* 128 S. C., 428.

October 19, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This, as stated by Mr. Justice Cothran, was an *action at law,* tried, without objection on the part of either of the parties, by a jury. The defendant asked the Court to direct *that jury* to find a verdict for it, and the motion was refused. The jury rendered a verdict for the plaintiff. The defendant then moved for a new trial *before another jury;* and this motion was denied. The defendant then appealed to this Court from the judgment entered on the *jury's verdict,* approved by the trial Judge. Here, the defendant has asked

that the verdict *of the jury* against it be set aside, and a *directed verdict* be entered in its favor; failing in that request, the defendant asks that a new trial *before another jury* be granted. The plaintiff, of course, asks that the judgment below be affirmed.

Mr. Associate Justice Cothran, in the opinion written by him, does not favor granting the request of the plaintiff, nor is he disposed favorably to either of the requests of the defendant. He proposes what is to be a new and novel course: To reverse the judgment in this legal action, based upon the verdict of the jury; to set aside everything done in the lower Court; to send this action at law back to that Court for trial as an action in equity; to bring into the action numerous new parties, who have not asked to come in, and who have not been invited in by either of the original parties; and to try a multitude of issues, which have not been heretofore suggested by any one, lawyer or litigant, connected in any way with this cause.

I am forced to disagree with the procedure suggested by the learned Justice, not because it is new and novel, but for two other more important reasons: First, because this Court will be compelled to go out of and beyond the record before it, if it takes the course proposed; and, second, because the judgment appealed from *should be affirmed.*

In considering this appeal, let us stay within the record made up by the appellant for hearing here, and consented to by the respondent. There are certain matters which should not be overlooked. First of all, let us see what issues were made by the pleadings. The complaint charged, briefly, that the plaintiff deposited in the Citizens' Bank of Timmonsville, on August 16, 1919, the sum of $3,000; that no part of this deposit was ever withdrawn from that bank; that the Citizens' Bank, being in imminent danger of insolvency (not insolvent), transferred all of its assets, including plaintiff's deposit of $3,000, to the defendant; and that

plaintiff's demand on defendant for his money had been refused.

The defendant's answer was a general denial—that, and nothing more. That answer meant that the defendant denied that the plaintiff had deposited $3,000 in the Citizens' Bank; that it denied that the plaintiff had not withdrawn his money; it denied that the assets of the Citizens' Bank, and especially the plaintiff's alleged deposit, had been turned over to the defendant; and it denied plaintiff had made demand for his deposit, and that such demand had been refused.

Both parties and the trial Judge in the Court below, all the way through, regarded the action as one at law. The plaintiff and defendant said there, as they say in this Court, that the action was on *quantum meruit* or for money had and received. The plaintiff endeavored to sustain the material allegations of his complaint by testimony he offered.

The presiding Judge was exceedingly liberal with the defendant in his construction of the pleadings. He did not confine it to the simple denials set up in its answer. The plaintiff complained in the trial that the defendant was being permitted to introduce evidence to sustain pleas not alleged in the answer. We shall pass over these objections of the plaintiff and extend to the defendant the same liberality shown it by the very fair rulings of the trial Judge.

On its motion for a directed verdict, the defendant took positions in line with the evidence it offered. These positions were as follows: That there existed between the plaintiff as a depositor, and the Citizens' Bank the relation of debtor and creditor; under the contract between the two banks, the defendant did not assume the payment of the alleged deposit of the plaintiff; that the plaintiff was estopped by his conduct; that there was no proof that defendant ever came into possession of the deposits; that the plaintiff could not recover because of negligence; and that the defendant was a

*bona fide* purchaser for value without notice of the plaintiff's claim.

In addition to the positions set out, the defendant, on the motion for a new trial, took these further positions: That the presiding Judge erred in holding, on the motion for directed verdict, that it was against public policy for the defendant to take over all the assets of the Citizens' Bank without it becoming liable to all the depositors of that bank for their deposits; that the action was for money had and received on the law side of the Court; that there was no evidence to sustain such action; that if the plaintiff was entitled to any remedy at all, it was by bill in equity against the defendant to subject the assets coming into its hands to the payment of his demand; that the holdings of the trial Judge had taken defendant by surprise; and that a new trial should be had to give the defendant an opportunity to show that the plaintiff had been paid his deposit.

By referring to the exceptions of the defendant-appellant, it will be seen that no complaint is made as to the receipt or rejection of evidence; and no error is imputed to the instructions of the Judge to the jury. The exceptions made by the appellant relate only to the failure to grant its motion for a directed verdict and to the refusal to grant its motion for a new trial.

In passing upon the questions presented for consideration, we shall not follow the exceptions as they are laid down. The appellant's counsel in their well-prepared brief have given us much assistance by setting out the questions really involved in the appeal, and we shall adopt their statement thereabout, for the sake of brevity, however, stating them in our own language. The questions raised in the appeal are these:

(1) Was the account of the plaintiff as a depositor of the Citizens' Bank *an account stated,* and should the plain-

tiff have first proceeded in equity to open up that account stated before he could bring his action at law?

(2) Was the plaintiff estopped by his conduct?

(3) Did the evidence sufficiently show that the defendant was enriched unjustly at the plaintiff's expense to sustain an action on *quantum meruit?*

(4) Did the evidence show that the defendant was a *bona fide* purchaser for value without notice?

(5) Did the contract between the Citizens' Bank and the defendant relieve the latter of liability to the plaintiff?

(6) Did the Circuit Judge abuse his discretion in refusing defendant's motion for a new trial on the ground of surprise?

The facts as recounted by Mr. Justice Cothran will be adopted in the main by us. We shall relate, however, some matters brought out in the evidence not referred to as fully by him as we think they should appear.

As to the first question. Generally, an account rendered and not objected to within a reasonable time becomes an account stated. But this rule refers only to such accounts as may become accounts stated. Formerly it was the rule that accounts stated existed only between merchants. Gradually, the doctrine was extended in many jurisdictions to all classes of business men. 1 R. C. L., 210, Par. 8. This broadening of the doctrine seems to have been recognized in the Federal Courts and in the Courts of the greater number of States in the Union. There are some exceptions to this general rule, however, as to banks and their depositors, and notably so in Virginia and West Virginia. *McGraw v. Traders' Nat. Bank,* 64 W. Va., 509; 63 S. E., 398. Neither has the rule been made broad enough in England and Canada to include banks and their depositors. See articles on Accounts and Accounting and Notes Thereto in Ruling Case Law and Corpus Juris. A well-recognized authority says:

"But the doctrine of retention merely of an account rendered has not been applied with its full effect to accounts between bank and depositor." *27 L. R. A.*, 820, note.

Then:

"An account between bank and customer, although balanced monthly, which is carried on for a period of years, constitutes together a running account and is in effect but one transaction." *Pickett v. Merchants' Nat. Bank,* 32 Ark., 346.

We have failed to find a case in our reports that holds, or even indicates, that the principle of accounts stated as between a bank and its depositor has ever been recognized in South Carolina. In the citations of authority of the appellant and respondent, no case so holding is pointed out.

In the absence of legislative enactment to direct us, with no precedent to bind us, and without decision to guide us, it seems necessary for this Court to decide at this time, if it will adopt the rule that the furnishing of a statement by a bank to its depositor, which is retained by the depositor and unobjected to, will, after a reasonable time, be regarded as an account stated. In making this decision, the striking language of Mr. Justice Cothran in a recent case, where the situation was somewhat like the present, seems appropriate:

"In this state of conflict between the decisions, it is up to the Court to 'choose ye this day whom ye will serve'; and, in the duty of this decision, this Court has the right to determine which doctrine best appeals to its sense of law, justice, and right." *Antley v. New York Life Ins. Co.,* 139 S. C., 23; 137 S. E., 199.

We are reminded, too, of what Mr. Justice Gage, then Circuit Judge, said in his dissenting opinion in *State v. Rhame,* 92 S. C., 455; 75 S. E., 881; Ann. Cas., 1914–B, 519:

"The banks carry the arterial blood of the business world. It ought to reach the people quickly, free from taint of suspicion."

There may be some reasons why the rule of accounts stated should apply to banks and depositors, we admit. There are others, however, more cogent to cause this Court to declare to the contrary. The Courts holding the former view base.their determination on the prime reason that the ordinary relationship of debtor and creditor exists between a bank and its depositor. They have overlooked one or two important things in their consideration. In calling attention to these we can do no better than quote from Corpus Juris:

"The contract between a bank and a depositor is not materially different from any other contract by which one person becomes bound to take charge of and repay another's funds. * * * *The relation between a bank and a depositor may be dual in character, the bank, being the depositor's debtor with respect to one thing and his agent with respect to another;* and while the relation between the bank and a depositor in respect to a general deposit is generally regarded as that of debtor and creditor, *yet in another sense, the depositor is the owner of the deposit, in that he can demand repayment at any time."* 7 C. J., 641.

It will be seen by looking at the words italicized by us in the excerpt, the exact ideas we have in mind: *The bank's agency of the depositor; and the right, generally, of the depositor to demand repayment at any time.* In most instances, the relation of principal and agent does not exist between a creditor and his debtor. And, likewise, in many cases, the creditor may not demand immediate payment of the debt.

It is the primary duty of a bank to carefully guard the money of its depositors, and to be ever ready to return the amounts intrusted on proper demand. If the money of a depositor in a bank is lost through either the fraud or negligence of any agent thereof, the bank is liable

for the loss sustained.  And even without fraud or negligence the bank is usually liable for such losses.

It has been well and generally known for many years that banking institutions advertise in every nook and corner that the money placed with them will be handled with safety and security.  And many banks have appealed, publicly, for deposits, with inviting promises, such as, "Let us do your bookkeeping for you."  All this has been, and is even to-day, so well known to bankers, depositors, and the people generally that this Court can and should take judicial notice thereof.

The tendency of legislation in this State, too, has been towards the protection of depositors.  As illustrations of this, the office of state bank examiner has been created; a statute was enacted making it a felony for an employee of a bank to accept a deposit when aware of the insolvency of the institution; and a provision in our Constitution subjects stockholders of banks to an assessment of 100 per cent. on the stock held by them for the benefit of depositors.

Under all the circumstances, the rule that the statement of a depositor's account with his bank should become an account stated for failure of the depositor to interpose objection thereto within a reasonable time is not consistent with justice and the relations existing between those classes of business people.  The rule we prefer to adopt is, in effect, this:

*Evidence of the retention by a depositor of statements or passbook of his bank, after a reasonable time for examination, without notice to the bank of objection thereto, may be given to show an implied admission of an acquiescence in the correctness of the account.*

The rule announced is almost in the words used in Corpus Juris in stating the principle adhered to in several jurisdictions in the United States.  1 C. J., 696, and note 61.  It is in accord also with this declaration in Ruling Case Law:

"The presumption of acquiescence in an account rendered, arising from its retention without objection after the lapse of a reasonable time, is not conclusive, but only evidence of an admission and is therefore subject to disproof." 1 R. C. L., 214, Par. 12.

Even if we agreed with the appellant that the transaction between the plaintiff and the Citizens' Bank had the effect of an account stated, still we could not follow appellant in its other contention that the plaintiff should have first instituted an equitable action. Let it be kept in mind that the defendant, and not the plaintiff, raised the question of an account stated.

Under our liberal practice, as laid down in the Code of Procedure, it was unnecessary for the plaintiff to have gone first into a Court of equity to "surcharge" or "falsify" (using the strictly legal terms) the alleged account stated of the defendant, as was required under the old practice. Two authorities, we think, are entirely sufficient to sustain our position:

"A stated account may be impeached for fraud, mistake, or error, by an original proceeding in equity brought for that purpose. *It may also be impeached when interposed as a defense to an action, either at law or in equity, for a preliminary proceeding to set it aside is never necessary to enable a plaintiff to make his principal cause of action available. Wherever it is thrust forward, in whatever form of action it is pleaded, it may be impeached. Thus the correctness of an account stated may be overcome by proof, either when the debtor is sued upon the account, if there is an error to his prejudice, or by the plaintiff by suing for the proper amount.*" (Italics added.) 1 R. C. L., 218, Par. 17.

"While a suit to open, surcharge or falsify an account is one proper for equitable jurisdiction, *yet the rule seems to be established that a stated account need not necessarily be impeached by a direct suit brought for that purpose. It*

*may be impeached for fraud or mistake either at law or in
equity whenever it is brought forward as a defense or cause
of action. Accordingly, when items are omitted, the stated
or settled account may be impeached by plaintiff suing for
the correct balance; and where the balance of a stated account
is settled or paid, or where, upon account between parties, an
item is omitted by mistake, the account may be impeached
in a suit to recover the omitted item, or items paid by mistake
or fraud."* (Italics added.)   1 C. J., 715.

Mr. Justice Woods said in *Smith v. Allmon,* 74 S. C.,
502; 54 S. E., 1014:

"But even if the parties had agreed that it [the account]
should have the effect of an account stated, it could not be
binding on either of them if clearly shown to be founded on
erroneous calculation."

The most favorable thing to be said of the conduct of
some one employed by the Citizens' Bank is that there was
error in failing to enter plaintiff's deposit on the books of
the bank.   We cannot see any distinction between an "er-
roneous calculation" and an erroneous entry, or failure to
make an entry through error.

This Court has shown in the past its strong belief in
honest dealings between a bank and one of its customers.
In the case of *Bank of Williston v. Alderman,* 106 S. C.,
386; 91 S. E., 296, where a bank, through its own error,
paid out over $500 on a check for only $15, the bank was
allowed to recover the money overpaid, and that decision
was absolutely right.   When the tables are turned, and the
customer has lost his money through a mistake of the bank,
why should not he be entitled to recover?

We next take up the second question, that relating to
the estoppel of the plaintiff.   The defendant relies
upon two cases to sustain its position that the plain-
tiff was precluded *as a matter of law* because of his negli-
gent conduct in failing to discover earlier the error in his

account and giving notice thereof. The case cited are *England National Bank v. United States* (C. C. A.), 282 F., 121, and *Leather Mfgr's Bank v. Morgan,* 117 U. S., 96; 6 S. Ct., 657; 29 L. Ed., 811.

We concede, frankly, that the *England case* does sustain the proposition of· the appellant. With due respect to the Court which decided that case, we do not think the law announced by it is correct, nor that the authorities cited sustain the proposition. It was held, succinctly stated, that the failure of the depositor to make the examination within a reasonable time, or to speedily notify the bank of the fraud committed, "is in law a conclusive admission of the correctness of the account." It must be manifest that the declaration goes too far. If that principle is correct, it would seem impossible to reopen an account stated, even as suggested by appellant's counsel, for mistake or fraud in an equitable action. The case of *Leather Mfgr's Bank v. Morgan, supra,* discussed later, is referred to as authority for the position taken. We shall demonstrate later, we hope, that that case does not go as far as was held in the *England case.* The other cases, given as authority, namely, *U. S. Bank v. Bank of Georgia,* 10 Wheat., 333; 6 L. Ed., 334; *Robb v. Vos,* 155 U. S., 13; 15 S. Ct., 4; 39 L. Ed., 52; *First Nat. Bank v. Farrell* (C. C. A.), 272 F., 371; 16 A. L. R., 651; and *Citizens' Bank v. Hinkle,* 126 Ark., 266; 189 S. W., 679, do not support the holding made. It would take too long to discuss these cases fully. In *U. S. Bank v. Bank of Georgia* and *Robb v. Vos* there was no issue between a bank and its depositor. While in *Bank v. Farrell* the amount of the judgment in favor of the depositor was reduced, the depositor's rights were sustained generally. In *Bank v. Hinkle* the verdicts in favor of the depositors were affirmed. In this case, the Supreme Court of Arkansas made a ruling, which we think is applicable here, and with which we agree:

"A bank depositor has the right to suppose that his account is being correctly kept, and, while bound to examine his passbook and to make complaint if it furnishes notice that improper charges have been made against the account, is under no duty to act until such notice." (Syllabus.)

From the *Morgan case,* the appellant cites this language, which seems favorable to its contention:

"In their relations with depositors, banks are held, as they ought to be, to rigid responsibility. But the principles governing those relations ought not to be so extended as to invite or encourage such negligence by depositors in the examination of their bank accounts, as is inconsistent with the relations of the parties or with those established rules and usages, sanctioned by business men of ordinary prudence and sagacity, which are or ought to be known to depositors."

We think the appellant has misapprehended, however, the full effect of the decision in the *Morgan case,* and has overlooked some expressions in the opinion very much applicable to the case at bar. We quote further from the same authority:

"While it is true that the relation of a bank and its depositor is one simply of debtor and creditor (*Phœnix Bank v. Risley,* 111 U. S., 125, 127 [4 S. Ct., 322]; Bk., 28 L. Ed., 374, 375), and that the depositor is not chargeable with any payments except such as are made in conformity with his orders, *it is within common knowledge that the object of a passbook is to inform the depositor from time to time of the condition of his account as it appears upon the books of the bank. It not only enables him to discover errors to his prejudice, but supplies evidence in his favor in the event of litigation or dispute with the bank. In this way it operates to protect him against the carelessness of fraud of the bank.* The sending of his passbook to be written up and returned with the vouchers is, therefore, in effect, a demand to know

what the bank claims to be the state of his account. And the return of the book, with the vouchers, is the answer to that demand, and in effect imports a request by the bank that the depositor will, in proper time, examine the account so rendered, and either sanction or repudiate it." (Itlaics ours.)

And to show that there are instances, under the law, where a bank is liable to a depositor for its negligence to his detriment, even if the depositor is also negligent as to examination of his accounts, we point to this excerpt:

"Of course, if the defendant's officers [referring to the bank], before paying the altered checks, could by proper care and skill have detected the forgeries, then it cannot receive a credit for the amount of those checks, even if the depositor omitted all examination of his account."

Again it was stated:

*'We must not be understood as holding that the examination by the depositor, of his account, must be so close and thorough as to exclude the possibility of any error whatever being overlooked by him. * * * While no rule can be laid down that will cover every transaction between a bank and its depositor, it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties, and the established or known usages of banking business."* (Italics added.)

While there may have been some evidence in this case to show negligence on the part of the plaintiff in the matter of examination of the statements furnished to him by the Citizens' Bank, or by the defendant, it cannot be held that all the evidence indicated without dispute that the plaintiff was negligent.

The statements furnished monthly may not have shown the deposit of $3,000. The modern bank statement, made on a machine, with its stars, dots, dashes, "O. D's," per-

forations, and its red, blue, and black ink, and with figures often running over each other, are difficult papers for many people to comprehend. But the old-time passbook is easy for those with but limited education to understand. The plaintiff had a book of that kind in his possession, given to him by the Citizens' Bank, and therein was proper entry of the deposit in question. It stands out boldly as evidence to show that the bank received plaintiff's money. Why should plaintiff, ordinarily, except when he found that his former trust had been misplaced, go into an examination of the monthly statements to see if his deposit had been entered thereon, *when the passbook gave "conclusive" evidence of the entry?*

The third question seems to be easily disposed of. If the plaintiff lost his $3,000 deposit, as alleged, some one, somewhere, and some time must have received the benefit thereof. If all the assets of the Citizens' Bank were delivered to the defendant—and that is conceded by defendant—the plaintiff's money, or whatever stood for his money, went into the defendant hands. If the plaintiff cannot recover of the defendant, it seems plain that he has lost his $3,000, and the defendant is enriched to that extent. In any event, it was a matter for the jury to determine on the evidence before it if the defendant was enriched at the expense of the plaintiff.

As to question four. In the recent case of *Kirton v. Howard*, 137 S. C., 11; 134 S. E., 859, this Court approved the three things stated to be necessary to entitle one to take advantage of the plea of purchaser for value without notice, as laid down in *Black v. Childs*, 14 S. C., 312, and other cases which approve the statement there made. In the *Kirton case*, the Court approved this language:

"One cannot successfully interpose this defense [plea of *bona fide* purchaser] where the circumstances are sufficient

to put one upon inquiry, or where one might by due diligence have ascertained the facts. One is charged with notice of every fact which such inquiry and such diligence will certainly disclose."

As we see it, the defendant, without requiring aid of the plaintiff, furnished sufficient evidence to demand that the jury settle the question. Mr. Winn, a witness for the defendant, who was formerly cashier of the Citizens' Bank, and after the transfer to the defendant became manager of its branch at Timmonsville, very frankly testified to the following facts: That he made up a schedule of the assets and liabilities of the selling bank when the transfer was made; this showed that the plaintiff was a depositor, and that his balance at the time of transfer was $5,667.45; that several months before the transfer, he found a shortage in the funds of the bank of $132,000; that several audits of the institution were made, and there was no reduction in the shortage; that soon after he went to work in the bank he found that the books were not dependable, and there were a great many irregularities; that the individual ledger did not correspond with the general ledger; that the loans and discounts were out of balance. When asked if he "fully acquainted Mr. Brand (president of defendant bank) with the condition of things you found there?" he replied, "No, I didn't; I think the president (the president of the selling bank) manipulated things there." He also testified that he told Mr. Brand that he had found "these books all mussed up," and that he had been trying to get them straightened out. Further, he stated, when asked if Mr. Brand knew of the errors in the old bank, "we knew that errors had been found, but we were under the impression that they had sifted down to $132,000."

The president of the defendant bank, Mr. Brand, was equally frank in his testimony. He testified that several audits disclosed that there was a shortage in the Citizens' Bank of around $132,000, and that he was aware of this

shortage when his bank entered into the contract with the selling bank; that the negotiations as to the sale covered a month or more; that he knew probably six months before the transfer that the selling bank "was in deep water"; that he had auditors of the Federal Reserve Bank to make an audit of the Citizens' Bank; that the shortage had wiped out the capital and surplus of that bank; that he demanded a schedule because he had heard of so many errors; that in addition to taking over all the assets of the Citizens' Bank, he required "a protective fund" of $75,000, and the Citizens' Bank was left nothing with which to pay any debts.

When the cashier of the selling bank, who thereafter became manager of the purchasing bank, and also the president of the latter had knowledge that somebody had abstracted from the funds of the old bank a sum around $132,000, when the capital stock of the bank was only $75,000, they must have been aware that at least $57,000 had been taken from money belonging to the depositors. As experienced bankers, they must have known, also, that in all likelihood the person who was responsible for the abstractions had probably made false entries, or omitted to make proper entries of deposits made by the depositors. They must have known, too, when the individual ledger of the depositors did not correspond with the general ledger of the bank, that there were likely errors in the accounts of the depositors. The information received. by these gentlemen, acting for the corporation they represented, was imputable to the corporation itself. Through them, the defendant was "charged with notice of every fact which (such) inquiry or due diligence" would have certainly disclosed.

We next turn to the fifth question. The record shows that when the stockholders of the Citizens' Bank agreed, in proper meeting, to sell and transfer all of its assets, real and personal, to the defendant, and when they agreed to turn over to the defendant, in addition

thereto, the sum of $75,000, in cash or in notes acceptable to the defendant, these things were to be done "in consideration of the assumption by second party (the defendant) of the liability of first party (the Citizens' Bank) to its depositors and the holders of its bills payable." (See contract.) It must be clear, as is held by Mr. Justice Cothran, that the words inserted in the contract by the officers of the two banks, attempting to limit the liability of the defendant to only certain obligations of the Citizens' Bank set out on a schedule attached to the contract, were void, as they were in absolute conflict with the directions given by the stockholders of the selling bank to its officers.

In connection with the question under consideration, the appellant has cited us to the case of *Brown v. American Railway Express Co.,* 128 S. C., 428; 123 S. E., 97, and we presume that it was that case to which Judge Rice referred in his remarks on appellant's motion for a directed verdict. The appellant seems to depend mainly upon the decision mentioned for reversal of the judgment below, and it calls our special attention to this language in the opinion there:

"In the absence of statute, in order to render a purchasing company liable for the debts of the selling corporation, it must appear: (a) That there was an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; (c) or that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transfer was pretensive of the transaction fraudulent in fact."

There was involved in the *Brown case* the liability of a purchasing corporation for the debts of a selling corporation, when the purchaser had bought all the assets of the seller, and where there was no express agreement that the purchaser would be responsible for the payment of such debts. In the case, it was sought to hold the American Railway

Express Company, purchaser of the assets of Southern Express Company, for a demand against the last-named corporation. The plaintiff had a directed verdict against the American Railway Express Company, the defendant. It appears that the Circuit Judge "held substantially that because the defendant has acquired and taken over the business of the Southern Express Company, it should be held liable as a matter of law for the delicts and debts of its predecessor on grounds of public policy." The defendant offered evidence tending to establish "that it did not acquire all of the property of the Southern Express Company and did not assume the payment of the outstanding debts and liabilities of that company; that the Southern Express Company thereafter continued its corporate existence, with a president, treasurer, claim department, board of directors, etc.; and that at the time of the trial of this cause owned real estate, stocks, and bonds, not included in the property transferred to the American Railway Express Company."

In the opinion in the *Brown case,* that case was distinguished from the case of *Brabham v. Southern Express Co. et al.,* 124 S. C., 157; 117 S. E., 368. In the *Brabham case,* the American Railway Express Company, one of the defendants, was held liable for a claim against Southern Express Company. The distinction made by Mr. Justice Marion, who wrote the opinion in the *Brown case,* was due to the fact that the evidence in the *Brabham case* "was susceptible of no other reasonable inference than that the Southern Express Company had gone out of existence, leaving no one to be sued by its creditors and no property to satisfy its debts; that it had become consolidated with or merged in the American Railway Express Company; and that liability for the payment of claims outstanding against it had been expressly or impliedly assumed by the American Railway Express Company."

In the *Brown case,* there was a reversal because the evidence was susceptible of at least one other inference in addition to the inference the presiding Judge drew from that evidence.

While the *Brown case* has not been distinctly overruled, the decision in *Terry Packing Company v. Southern Exprss Co. et al.,* 140 S. E.,—, filed on June 21, 1927, may have modified, to some extent, the holdings in the *Brown case.* It does not seem necessary to go into all these matters in order to decide the case at bar. It is our opinion, however, that the *Brown case* is not controlling of the issue made by the appellant.

There was in the *Brown case* no evidence to show that the purchasing corporation had *expressly* agreed to assume payment of the debts of the selling corporation. In the case at bar, construing the contract between the selling bank and the purchasing bank without the limitation placed therein at the instance of the Federal Reserve Bank, there was an *express* agreement that the purchasing bank would pay off the depositors of the selling bank.

But if it should be considered that there was no express agreement on the part of the defendant to pay all the deposit accounts of the Citizens' Bank, and that in order to hold the defendant for the claim of the plaintiff it would have to be upon the theory of an implied agreement on the part of the defendant to pay those deposits, we think the evidence was sufficient to require that that particular issue be submitted to the jury.

Some facts adduced in the evidence from plaintiff's standpoint were these: The Citizens' Bank ceased to function on October 3, 1922, when the sale was made; it did no business thereafter; the defendant took over all the assets of the old bank, leaving it nothing whatever; defendant occupied as a banking house the building so used by the selling bank; it was paying the depositors and creditors; the old bank "sur-

rendered its charter," as testified to by plaintiff (this seemed disputed, though) ; the defendant paid nothing on account of its purchase. One of defendant's witnesses (Manager Winn) swore that the defendant "took over the affairs of the Citizens' Bank." Mr. Brand, president of defendant, testified that the bank "took over all the assets, real and personal, of the Citizens' Bank," and that the latter institution "had nothing else out of which to pay any debts whatever." The stockholders of the old bank put up $75,000, evidently for the protection of their depositors.

The situation is entirely different to that appearing in the *Brown case*. The facts here are stronger against the purchasing corporation than they were in the *Brown case*. Even in that case, this Court held that the Circuit Judge was right in not directing a verdict for the Express Company, and sent the case back for jury trial. The concluding words of the opinion of Mr. Justice Marion are singularly applicable here :

"The exceptions directed to the contention that the trial Court erred in refusing to direct a verdict for the defendant are overruled. It cannot be held that the evidence adduced. by plaintiff was not susceptible of inferences of fact which would support a conclusion, under the foregoing views of the principles governing liability, that the defendant was legally liable for the payment of the plaintiff's claim in the case at bar."

It is interesting to note that in the recent case of *American Railway Express Company v. Commonwealth of Kentucky,* decided by the Supreme Court of the United States on February 21, 1927, 47 S. Ct., 353, what that Court had to say and did regarding the liability of American Railway Express Company for debts of Adams Express Company, the assets of which had been taken over by the former named company. In that case, the Kentucky Supreme Court held the American Company for the debts of the Adams Com-

pany. The Supreme Court of the United States refused to interfere with that decision and held, in substance, that the State of Kentucky had the right to enact through its legislative department a statue requiring a purchasing corporation to take care of the debts of the selling corporation. and, in the absence of legislative enactment, that the Courts of Kentucky could put in force a rule to the same effect, which would be just as valid as a statute would have been.

Even if the *Brown case* is to stand—and we are not called upon here to affirm, overrule, or modify it—we cannot see how it. is to avail the appellant.

It is true that there seems to be no statute in this State which directly regulates the transfer and sale of all the assets of one banking institution to another. Even if corporations of other classes should be permitted to sell all their assets to another corporation and evade their liabilities to creditors, banks should not be permitted to do so. In the absence of legislation to direct this Court, we are clearly of the opinion that no banking corporation should be permitted to sell all its assets to another banking institution, or to any person, firm, or corporation for that matter, and discontinue its operation, without making provision for the payment of the depositors of the selling corporation, unless the depositors agree to such sale. In a transaction of that kind, the purchaser should be held, even if there is no contract to that effect, to have assumed the liability of paying depositors. We agree with Judge Rice, who tried this case, that if a bank be permitted to evade its full responsibility to its depositors, such course would be against public policy and in conflict with our sense of justice. Banks, as conducted now, are almost *quasi* public institutions. They are of the very heart of the business body of the communities in which they operate. The purchaser of the assets of a banking institution knows full well, and should be held to be legally bound by the knowledge, that a bank is daily receiving funds from the

people generally, from all who confide and trust in it. The purchaser is and should be aware that these depositors are entitled to demand their money at almost any time; and that the money intrusted to the bank for safe keeping is, oftentimes, funds which have been likewise entrusted to trustees, guardians, and others of a fiduciary character, and that very often the money belongs to widows and orphans.

The appellant argues that the holding of Judge Rice, with which we have agreed, will prevent banks that are financially strong from taking over the assets of other banks facing failure, and the result will be against the interest of creditors and depositors of such selling banks under such cicumstances. We do not agree with the appellant's apprehensions. A strong bank desirous of purchasing the assets of a weak institution looks, of course, to the advantages accruing to it by securing the business of the customers of the selling bank. There may be, and most likely are, methods by which the purchaser may properly protect itself. There is an old maxim of the law, *"Caveat emptor, qui ignorare non debuit quod jus alienum emit."* (Let a purchaser beware, who ought not to be ignorant that he is purchasing the rights of another.) We cannot imagine a case where this principle is more applicable than in an instance where one bank purchases the assets of another bank, for who more than a banker should know and appreciate the duties, trusts, liabilities, and responsibilities of a bank to its customers?

As to the last question—the surprise given the defendant by the rulings of the presiding Judge. Should he have granted a new trial for that reason? This, of course, was largely within the discretion of the Court. Unless there was a clear abuse of that discretion, this Court should not and will not interfere therein. The appellant was fully advised of the views of the presiding Judge when he refused the motion for a directed verdict. If the appellant was surprised, the surprise came at that time,

and then was the time for the appellant to have made known its surprise and to make its request for further time to investigate the plaintiff's deposit account, if the appellant desired to do so. If the Circuit Judge considered the request proper, he could have granted it, even if it became necessary to order a withdrawal of the case from the jury. The appellant waited too long, it seems to us; it did not make its request until the adverse verdict had been rendered. This Court has not favored the practice of a litigant waiting until he has lost his case to raise questions which he could and should have raised before the unfavorable verdict was announced.

But the appellant should have been prepared to disprove the allegation of the plaintiff that he had made the deposit, if the appellant had such proof at hand, or could have obtained it. The whole theory of plaintiff's case was based on the allegation that he had made the deposit. Really, all through the trial, as the record here shows, the appellant never seemed to question the fact that the deposit had been made, and that the plaintiff had not received proper credit therefor on the books of the Citizens' Bank.

It is an elementary legal proposition now in this State that if a complaint in an action at law states a legal cause of action, and the plaintiff submits *any evidence* tending to establish the material allegations of his complaint, as a matter of law, it is the duty of the trial Judge to submit the case to the jury for its determination. The trial Judge in this case ruled correctly on all legal propositions submitted to him, which have been questioned by the appellant. There was sufficient evidence on every disputed issue between the parties to require that the case be submitted to the jury. The jury having found in favor of the plaintiff, the granting of a new trial on the grounds urged by the appellant was almost entirely within the discretion of the trial Judge. A close and

careful examination of the record in this case discloses that the parties were given a fair and impartial trial.

This opinion was prepared as a dissent from the opinion of Mr. Justice Cothran; a majority of the Court having concurred therein, it hereby becomes the opinion of the Court, and it is, therefore, the judgment of this Court that the judgment below be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE COTHRAN (dissenting) : This is an action *at law* to recover the sum of $3,000.00, with interest, the amount of a deposit made by the plaintiff with the Citizens' Bank of Timmonsville, on August 16, 1919, for which no account has ever been made by said bank. The plaintiff claims that the defendant, Commercial & Savings Bank, of the same place, is liable to him for said deposit by reason of the fact that on October 5, 1922, when the Citizens' Bank was "embarrassed and in imminent danger of insolvency," it transferred to the defendant all of its assets, including the $3,000.00 of the plaintiff then to his credit as a depositor.

It will be observed from the complaint that the plaintiff does not rely upon any contract by which the defendant, upon said transfer, *expressly* assumed the outstanding obligations of the Citizens' Bank, but upon an obligation *implied* from the simple facts that the Citizens' Bank was indebted to him on account of said deposit at the time of the transfer, and that the defendant had acquired by the transfer all of the assets of the Citizens' Bank.

The defendant by its answer pleaded a general denial, but in the evidence and argument takes the position that it is not liable to the plaintiff, by reason of the specific terms of the contract which limited its obligation, as will be explained; that the plaintiff is estopped by his conduct from insisting upon the defendant's liability to him; and that the defendant is a *bona fide* purchaser of the assets of the defunct bank without notice of the plaintiff's demand. The

defendant also insists that the plaintiff's remedy, if any, was in equity and not at law.

The case was tried before his Honor, Judge Rice, and a jury. The defendant made a motion for a directed verdict upon the grounds set forth in Exception 1, with its specifications; the motion was refused. The jury, after the Judge's charge, to which no error is assigned, rendered a verdict in favor of the plaintiff for the full amount claimed. The defendant then moved for a new trial upon the grounds set forth in Exception 2, with its specifications; this motion was also refused. The defendant now appeals from the judgment entered upon the verdict, assigning error in the refusal of the motions above referred to, upon the grounds set forth in the exceptions.

The undisputed facts appear to be as follows:

A few weeks prior to October 1, 1922, a shortage of $132,000.00 was discovered in the assets of the bank, the cause of which is not disclosed in the record for appeal; this shortage completely wiped out the capital stock, surplus, and undivided profits of the bank, which amounted to $127,-731.90; conferences followed with the State Bank Examiner and negotiations were opened with the Commercial & Savings Bank looking to a transfer of all of the assets of the Citizens' Bank to the Commercial & Savings Bank, upon certain terms and conditions; these negotiations resulted in resolutions adopted by the board of directors of the Citizens' Bank and resolutions adopted by the stockholders, on October 3, 1922, authorizing the transfer, "in consideration of the assumption by second party (the Commercial & Savings Bank) of the liability of the first party (the Citizens' Bank) to its depositors and the holders of its bills payable," authorizing the execution of the necessary contract and assignments to carry the transfer into effect.

Pending the execution of the contract as authorized, it appears that the Commercial & Savings Bank insisted upon what was termed a "protection fund" of $75,000 (the

amount of the capital stock), to be paid to it by the stockholders, we assume, upon their statutory liability of 100 per cent. of their stock. This appears to have been agreed to by the stockholders; at any rate, collection was made by the defendant from the stockholders to the amount of $65,-000.00, all but $10,000.00 of the statutory liability.

It appears also that it was considered necessary to obtain the sanction of the Federal Reserve Bank to the terms of the transfer, and that in compliance with their requirements the obligation of the Commercial & Savings Bank was limited by the terms of the contract between the two banks, as thus expressed:

"And in consideration of the transfer to it of all of the assets of first party hereinabove mentioned, the second party for itself, its successors and assigns, does covenant and agree with the first party that it will and does hereby assume the obligation of paying the bills payable and the depositors of first party in full, but no other obligations of said first party, *the extent of this obligation being that set forth in the schedule shown in the statement of the Citizens' Bank, Timmonsville, S. C., at the close of business, October 3, 1922, signed by D. J. Winn, which statement is attached hereto and made a part of this contract.*"

This arrangement was approved by the State Bank Examiner.

From the schedule or statement, dated October 3, 1922, which accompanied the contract and was made a part of it, it appears that the deposit accounts for which the Commercial Bank assumed liability aggregated $134,000.00 (in round numbers), and the certificates of deposit, $30,000.00 (likewise).

The books of the Citizens' Bank showed that at the date of the statement, the plaintiff's deposit account, included in the $134,000.00, was $5,667.45.

The assets (nominal) delivered over to the defendant bank under the written agreement of October 5, 1922, consisted of:

| | |
|---|---:|
| Loans and discounts ....................$ | 347,460.35 |
| Banking house .......................... | 4,000.00 |
| Furniture and fixtures .................. | 2,000.00 |
| Expense (?) ........................... | 7,666.19 |
| Due by other banks ..................... | 14,800.88 |
| Cash ................................. | 8,209.80 |
| Cash items and checks ................. | 4,298.45 |
| | $ 388,435.67 |

(Put down in the statement of Winn as $388,455.67, a discepancy of $20.00.)

So that, upon the assumption that the foregoing assets were all worth 100 cents on the dollar, the defendant received:    .

| | |
|---|---:|
| Assets ...............................$ | 388,435.67 |
| From stockholders ..................... | 65,000.00 |
| Total ...........................$ | 453,435.67 |

The liabilities assumed by the defendant under the written agreement of October 5, 1922, were:

| | |
|---|---:|
| Interest and discount ...............$ | 3,531.82 |
| Exchange ............................. | 253.97 |
| Deposits ............................. | 134,519.55 |
| Certificates of deposit .................. | 29,910.89 |
| Cashier's checks ...................... | 1,007.54 |
| Bills payable ......................... | 66,500.00 |
| War Finance Corporation ............... | 25,000.00 |
| Total ...........................$ | 260,723.77 |
| A margin of .......................... | 192,711.90 |
| | $ 453,435.67 |

Against this margin must be charged a shortage, due to the abstraction of the assets of $132,000.00, leaving a possible margin of $60,000.00, assuming that all of the itemized assets were worth dollar for dollar, and regardless of the later probable discovery of other irregularities.

Some three months after the transfer the plaintiff claims to have discovered, by a checking up of the monthly statements of account rendered by the Citizens' Bank to him with the passbook in his possession and with the books of the bank, that he had not received credit on the books of the bank for a deposit of $3,000.00 made by him on August 16, 1919, and that consequently the balance to his credit on the deposit account should have been $8,667.45 instead of $5,667.45.

The evidence is plenary that on August 16, 1919, the plaintiff made two notes at the Citizens' Bank; one for $1,585.00, and the other for $3,000.00; that the proceeds, the face values of the two notes, were entered as credits upon his passbook; the proceeds of the $1,585.00 note were entered upon the books of the bank as a deposit from the plaintiff, but the proceeds of the $3,000.00 note do not appear to have been so entered. Both notes have been paid by plaintiff.

During the months of August, September, October, and November, 1919, it appeared that the Citizens' Bank had regularly transmitted to the plaintiff statements of his deposit account, upon which the alleged $3,000.00 deposit did not appear. Regularly thereafter similar statements were transmitted, none of which showed the deposit in controversy. These statements were used by the son of the plaintiff in his discovery of the fact that the deposit statements and the passbook did not agree. A batch of them was offered by the plaintiff in evidence.

After the transfer had been completed the depositors of the Citizens' Bank to the extent of $134,519.95 (which included the balance appearing to be due the plaintiff of $5,-

667.45, but not the $3,000.00 deposit of August 16, 1919) were credited with the respective balances on the books of the Commercial Bank. The balance in favor of the plaintiff, $5,667.45, who continued to run an account with the Commercial Bank, was credited to him and has been drawn out in his usual course of business. No complaint appears to have been made by the plaintiff to the transfer or to the amount appearing as his deposit balance, until practically three months after the defendant had taken over the assets of the insolvent bank and settled with him upon the basis of his account as it appeared upon the books of that bank and in the statement which accompanied the written agreement. .

It appears that the resolutions of both the directors and the stockholders provided for a contract by which the Commercial & Savings Bank would assume *the liability of the Citizens' Bank to its depositors and the holders of its bills payable;* the contract as executed contains a material limitation upon this liability, to the effect that it should not extend beyond the liabilities set forth in the Winn statement of October 3, 1922. The officers of the respective banks were without authority to include this limitation, even at the suggestion of the Federal Reserve Bank, in the contract which they executed. This lack of authority on the part of the officers of the two banks cannot, however, fix upon one of the parties to the written contract an obligation, however consistent with the resolutions, which that party not only did not assume, but expressly declined to assume.

It therefore amounts to this, that the Commercial & Savings Bank has, without authority, taken over the assets of the Citizens' Bank and is accountable, as a trustee, to the stockholders, depositors, and general creditors for the proper administration of its trust. This accounting should be had under equitable proceedings, and not in an action at law for the amount of the plaintiff's claim.

The plaintiff makes no complaint of the validity of the transfer; in fact, he relies upon its validity to establish the liability of the defendant to him.

If the defendant can show that it has collected all the assets of the Citizens' Bank which another of business judgment, vigilance, energy, and diligence could have collected, and disbursed the funds to those legally entitled to the same, all that the plaintiff has a right to demand, upon the establishment of his claim, is that he be let into the distribution, and receive the *pro rata* which he would have received if his claim had been recognized in the distribution.

It may develop that the defendant has used all required diligence in the collections, and yet has not collected enough to pay the liabilities of the bank in full. Surely under these circumstances the plaintiff would not have the right to demand payment of his claim in full.

Viewing the case from another angle, it is not an adjudicated fact that the Citizens' Bank was insolvent at the time of the transfer. It is highly probable that it was, but that fact has not been established. Conceding, however, that it was, it seems to be the settled law in this state that at the moment of the insolvency of a bank its assets become a trust fund for the benefit of all of the depositors and creditors of the bank.

As is said in the case of *Livingstain v. Bank*, 77 S. C., 305; 57 S. E., 182; 22 L. R. A. (N. S.), 442; 122 Am. St. Rep., 568:

"No rule of equity appeals more to the judicial conscience than that which requires the assets of an insolvent corporation to be distributed ratably among creditors."

See, also, *Bank v. Bradley*, 136 S. C., 511; 134 S. E., 510.

The inevitable result of this conclusion is that at the moment of insolvency of a bank its assets become impressed with a trust that they be distributed ratably among its creditors, subject, of course, to existing liens, and the manag-

ing agents become the administrators of the trust. See the authorities cited by the writer in *Rice v. Columbia,* 139 S. E., 783, in process of decision.

If the Citizens' Bank was insolvent at the time, the officers of the bank, and even the stockholders, were in duty bound to treat its assets as a trust fund, and the Commercial & Savings Bank took them with no higher right *cum onere.*

The plaintiff, too, is bound to recognize the existence of the trust; to allow him a judgment, personal, against the trustees for the amount of his claim would be to award him a preference over all other creditors, in disregard of the salutary equitable principle of equality.

Under this view it is clear that the proceeding should have been in equity for an accounting of the trust estate in the hands of the Commercial & Savings Bank, as hereinbefore indicated.

The trust estate for which the defendant is accountable consists of the assets of the Citizens' Bank which have come into its hands, or which, in the exercise of ordinary prudence and care, should have come, and for their proper distribution. The basis of its accountability, the *res* upon which the Court of Equity will impress a trust, is the possession of assets subject to the equitable principle of equal distribution among the creditors of the transferring bank. It is, therefore, accountable *for what it has received* or should have received; quite a different proposition from liability to the several creditors for their respective demands, *at law.*

"The purchasing corporation is liable for the debts of the selling corporation *only to the extent of the value of the assets actually received by it. Mahaffey Co. v. Russell* (1911), 100 Miss., 122; 54 So., 807, 945." Note, 15 A. L. R., 1150.

"Where there is an absorption of the business and assets —in other words, a merger *de facto*—either by a corpora-

tion formed for the purpose, or by one already in business, the liability of the corporation receiving the assets is, where it exists, based upon the so-called 'trust fund doctrine,' on the ground that such receiving corporation does not stand as a *bona fide* purchaser for value. *In such case the extent of the liability is necessarily determined by the value of the property received."* Note, 15 A. L. R., 1150.

"The question of the extent of liability is elaborately discussed in *Okmulgee Window Glass Co. v. Frink* (1918), 260 F., 159; 171 C. C. A., 195, writ of certiorari denied in (1920), 251 U. S., 563; 40 S. Ct., 342; 64 L. Ed., 415, and the conclusion there reached that such liability *is limited to the amount of the value of the property received."* Note, 15 A. L. R., 1150.

"It has accordingly been held that where there is no identity between the two corporations, the successor cannot be sued at law for the debts of its predecessor (*Hopkins v. St. Paul & P. R. Co.* [1872], 2 Dill., 396, Fed. Cas. No. 6,690) ; and that a personal judgment cannot be rendered against the purchasing corporation in an action for negligence of its vendor (*Abilene Cotton Oil Co. v. Anderson* [1906], 41 Tex. Civ. App., 342; 91 S. W., 607)." Note, 15 A. L. R., 1150.

"It is true that one corporation cannot, to the prejudice of its creditors, give away its assets to another corporation; nor can one corporation defeat the creditors of another by the purchase of its assets, even for value, unless such purchase is *bona fide.* In either case, the purchasing corporation is liable for the debts of the selling corporation, *but only to the extent of the value of the assets actually received by it.* [Italics added.] These principles are too well settled and familiar to require the citation of authorities for their support." *Mahaffey v. Russell,* 100 Miss., 122; 54 So., 807.

"As hereinbefore remarked, the transfer of the assets of one corporation to another may amount to a merger in fact, although the corporate existence of the transferor corpora-

tion continues.' In such case, equity looks past the form and at the real effect of the transaction, and by an application of the trust fund doctrine holds the transferee liable *to the extent of the assets received,* as in such case it is not a *bona fide* purchaser for value." Note, 11 L. R. A. (N. S.), 1131.

"Purchaser of all of stock of corporation, taking over all its assets, leaving nothing in their place, is liable for its debts, *within the limits of such assets." Blackinton v. United States* (C. C. A.), 6 F. (2d), 147.

"Transferee of insolvent corporation takes its assets subject to payment of its legitimate debts, and holds same in trust for that purpose." *Love v. Bracamonte* (Ariz.), 240 P., 351.

"A corporation acquiring assets of another corporation is not liable primarily for the debts and obligations of the first corporation, but its liability therefor is *limited to the value of the assets received,* and accrues only after creditors have exhausted their remedies against the first corporation." *Automatic Co. v. Wire Co.,* 159 App. Div., 656; 144 N. Y. S., 1037.

"Where one corporation transfers all its assets to another corporation, not in the ordinary course of business, and thereby practically ceases to exist, without having paid its debts, the purchasing corporation takes the assets subject to an equitable lien in favor of the creditors of the selling corporation." *Luedecke v. Des Moines Cabinet Co.,* 140 Iowa, 223; 118 N. W., 456; 32 L. R. A. (N. S.), 616.

"Where one corporation goes out of business, transferring its assets to another so that practical merger results, liability of new company for debts of old *is measured by value of property to which creditors of old company had right to look for payment of their claims." Jackson v. Knights,* 101 Kan., 383; 167 P., 1046.

"Where corporations merge and one continues business and the constituent corporations cease to do business, a

creditor of a constituent corporation may enforce his claim against it *to the extent that it acquires property and assets of the constituent corporation.*"  *Collinsville Bank v. Esau,* 74 Okl., 45; 176 P., 514.

"When one corporation takes over all the tangible assets and properties of another, and issues shares of stock in sole payment therefor, it takes the same subject to the debts and liabilities of the old corporation, *in a sum equal to the value of the assets taken.*"  *Peters v. American Co.* (Mo. App.), 256 S. W., 100.

"Where express company turned over its business and property used therein along with another company, for its proportionate share of stock of consolidated corporation, and ceased to do an express business, and was without assets to pay its obligations, assets of constituent companies constituted a trust fund for payment of their debts which consolidated corporation impliedly agreed to pay." *American Co. v. Royster,* 141 Va., 602; 126 S. E., 678.

The question of the liability of a transferee corporation for the debts of the transferring corporation, where the transfer is tainted with fraud or where it is simply a device for continuing the same business and to evade the payment of the debts of the transferring company, has not been considered, as we deem it foreign to the facts of this case.

Attention should be called to the fact that, if the $65,-000.00 collected from the stockholders was upon their stattory liability, it was not a part of the assets of the Citizens' Bank, and if collected by the defendant, constituted a trust fund in its hands for the benefit of the depositors, who had the first call upon it; a matter which should be taken into consideration in the accounting.

The defendant, therefore, being a trustee of the assets of the bank, cannot claim to have been a *bona fide* purchaser for value of such assets, nor can it plead estoppel against the plaintiff by his conduct in not examining his statements and calling attention to the continual omissions

of the $3,000.00 deposit.  A trustee is not personally in-
terested in the trust fund, and is not concerned in a ques-
tion of estoppel which · might arise among the creditors
contesting the claims of one another.  The question of es-
toppel here could only arise between the plaintiff and the
Citizens' Bank, and, as there is nothing to show that that
bank was at all injured by the neglect of the plaintiff, it
cannot arise at all.

In the accounting which the defendant should be called
upon to make, it should be allowed credit for all necessary
expenses, including reasonable attorney's fees, in the admin-
istration of the trust.

The question of the effect upon the transfer, in the event
that it should be adjudicated that the bank was not insol-
vent at the time of the transfer, should be reversed.

(The Reporter will incorporate in the report of this case,
the complaint, the answer, the contract of October 5, 1922,
the Judge's ruling on motion for a directed verdict, and the
exceptions.)

The judgment of this Court should be that the judgment
of the Circuit Court be reversed and that the case be re-
manded to that Court for further proceedings consistent
herewith.